Updated: July 3, 2014

IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,218

STATE OF KANSAS,
*Appellee*,

v.

KEVIN L. BROWN, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

A premature notice of appeal that seeks review of a conviction and a sentencing yet to be completed lies dormant until the final judgment, including the complete sentence, is pronounced from the bench, at which point the notice of appeal becomes effective to endow the appellate court with subject matter jurisdiction.

2.

The complaint or information is the jurisdictional instrument in a criminal prosecution. If a crime is not specifically stated in the complaint or information or is not a lesser included offense of a charged crime, the district court does not have jurisdiction to convict a defendant of the uncharged crime, regardless of the evidence presented. A conviction for an offense over which the district court did not obtain jurisdiction is simply void.

3.

An information or complaint is sufficient to invest the trial court with jurisdiction over a charged crime if it alleges all of the elements of the offense, if it sufficiently

1

apprises the defendant of the facts against which he or she must defend, and if it is specific enough to safeguard the defendant against a subsequent prosecution for the same offense.

4.

A facially valid charging document cannot be rendered jurisdictionally defective because of unchallenged latent defects in the preliminary hearing proceedings.

5.

A challenge to the sufficiency of a preliminary hearing is deemed waived unless it is raised with a motion to dismiss or with another motion for appropriate relief which is filed in the district court before the defendant is convicted of the offense.

6.

The aiding and abetting statute does not add distinct material elements to the definition of a charged crime, and, therefore, aiding and abetting is not an alternative means of committing a charged crime.

7.

Aiding and abetting is a theory of criminal culpability rather than a separate and distinct crime.

8.

The pattern instruction for felony murder that instructs a jury that the killing must occur during the commission of the underlying felony is sufficient to inform the jury that

2

the offense does not include a murder committed after the underlying felony has been abandoned or completed.

9.

A jury instruction on the elements of a charged crime that includes less than all of the alternative means of committing the offense listed in the charging document is not erroneous, absent a showing of prejudice to the defendant.

Appeal from Sedgwick District Court; CLARK V. OWENS II, judge. Opinion filed July 3, 2014. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Kevin L. Brown sought revenge against Otis Bolden for perceived sexual transgressions against his girlfriend, Jalessa Bonner, and her friend, Kiara Williams. After enlisting the help of his cousin, Quartez Brown (hereafter Quartez), the two men proceeded to Bolden's apartment, accompanied by Bonner and Williams, where the Brown cousins entered the apartment, assaulted Ashley Green with a firearm, and fatally shot Bolden. All four participants were prosecuted. Bonner entered into a plea agreement, while the other three were convicted at separate jury trials. In this case, Brown was convicted of felony murder, aggravated burglary, and aggravated assault.

3

Quartez, Williams, and Brown all appealed their convictions, and the oral arguments in their cases were conducted on the same day, albeit the three appeals do not raise any common issues. Some of Brown's issues on appeal are not easily grasped, so we take the liberty of beginning by simply reciting his stated issues on appeal from his appellate brief:

"A.     The district court never gained jurisdiction to convict Mr. Brown of felony murder nor aggravated burglary because he was not bound over for aggravated assault against Otis Bolden as the underlying intent element of aggravated burglary.

"B.     Mr. Brown was charged with all crimes as an aider/abettor, when there was no evidence to support the alternative means of being the principal or an aider and abettor.

"C.     Aiding and abetting the commission of a criminal act is a separate and distinct crime from acting as the principal in the commission of a criminal act.

"D.     The instructions given to the jury regarding the felony murder charge and the underlying felony were flawed, deficient and ineffective.

"E.     Mr. Brown's convictions for felony murder and burglary are invalid due to the State's failure to amend the Information and for the district court's unwarranted narrowing of the charges in the jury instructions."

FACTUAL AND PROCEDURAL OVERVIEW

Hours before Bolden was shot, he and his friend, Reader Watley, had driven Bonner, Williams, and their friend, Rika Evans, to a club in Wichita. After the club closed, Bolden and Watley took the three women to Bolden's apartment. At the apartment, Bonner formed the belief that Bolden had participated in her gang rape some 2 years prior, and she asked to leave. Bolden and Watley proceeded to drive the three women to Bonner's home, although Williams would return to the apartment to spend the night with Bolden, Watley, and Green, who was picked up on the return trip.

4

The next morning, Brown went to the women's home, and Williams returned from Bolden's apartment. At some point, Bonner told Brown that she believed Bolden had been one of her rapists and she shared that the night before Bolden had belittled Brown. Also, Williams allegedly reported that Bolden and Watley had sexually assaulted her during the previous evening by touching her inappropriately. Angered by that information, Brown called Quartez, who came to the women's house, where they planned their revenge against Bolden. There were varying statements about the planned action, such as beating Bolden, robbing him, or just talking to him.

Bonner, Williams, Brown, and Quartez left in an automobile, en route to Bolden's apartment. The Brown cousins had never been to Bolden's apartment, so Bonner and Williams helped direct them there. On the way, the cousins stopped at a house to obtain two guns in the event that Bolden was armed or another man was present in the apartment.

Upon arriving at the apartment, Bonner and Williams remained in the car, while the Browns entered the unlocked apartment with their guns drawn. They first encountered Green, who was walking from the bedroom into the kitchen. At gunpoint, they ordered Green to the ground and demanded the location of Bolden. The two men proceeded to the bedroom indicated by Green and found Bolden in his bed. Although Bolden was shot multiple times, he managed to jump through his bedroom window and run down the sidewalk before collapsing. Police were summoned by witnesses who discovered Bolden on the sidewalk. He died shortly after arriving at the hospital.

Green fled the apartment and returned home, where she contacted the police and informed them that Williams and Watley had been at the apartment the previous evening.

Information gleaned from Watley's interview led police to Brown, Bonner, and Williams, who all eventually confessed to being part of the incident that led to Bolden's death.

Brown, Quartez, Bonner, and Williams were all originally charged with the felony murder of Bolden and the aggravated assault of Green. With respect to the felony-murder charge, Brown's complaint alleged that Brown killed Bolden "while in the commission of, attempt to commit, or flight from, an inherently dangerous felony, to wit: Aggravated Burglary, Aggravated Assault, Aggravated Battery or Aggravated Robbery." The preliminary hearings for Brown, Bonner, and Williams were conducted together, and, at the conclusion, the prosecutor requested two additional counts: one alternative count of first-degree premeditated murder and one count of aggravated burglary. With regard to the aggravated burglary charge, the prosecutor stated: "Aggravated burglary is when they went in the house and they committed the aggravated assaults or an aggravated battery, or murder for that matter, as the underlying felony when they entered that residence."

Prior to the district court's binding over of Brown, his trial counsel requested to be informed of which felonies were incorporated into the felony-murder charge and indicated a belief that, if there was to be more than one underlying felony, they should be charged. The district court responded that the felony-murder charge was supported by evidence of aggravated burglary, aggravated assault, and aggravated battery. The district court explained that the aggravated burglary charge was based on the evidence that "they entered the apartment expecting it to be occupied by at least Otis Bolden and [it] happened to be occupied by Ashley Green." The judge concluded, with respect to Brown, that

> "the evidence would support probable cause for premeditated, first degree murder as an
> alternative to Count I. Ashley Green said both of the black males entered the apartment,
> pointed guns at her and told her to get on the floor, so aggravated assault, there is

6

probable cause to believe he committed that offense, as well as the aggravated burglary, as found. There is probable cause and I will bind him over for an arraignment on the Amended Information."

Consequently, an information was filed against Brown containing the added charges of first-degree premeditated murder, in the alternative to felony murder, as well as aggravated burglary. For the felony-murder count, the information stated, in relevant part, that Brown

"did then and there unlawfully kill a human being, to wit: Otis L. Bolden Jr. . . . , while in the commission of, attempt to commit, or flight from, an inherently dangerous felony, to wit: Aggravated Burglary, Aggravated Battery and/or Aggravated Assault as defined in K.S.A. 21-3436 and amendments thereto, by inflicting injuries from which said Otis L. Bolden Jr. . . . did die on April 26, 2010."

For the aggravated burglary count, the information alleged, in relevant part, that Brown

"did then and there unlawfully, intentionally, knowingly and without authority, enter into or remain within a structure . . . in which there were human beings, to-wit: Ashley R. Green and Otis L. Bolden Jr., with the intent to commit a felony, to-wit: Aggravated Battery, Aggravated Assault and/or Murder in the First Degree, therein."

Brown had a separate jury trial, at which his defense to the felony murder was that he only shot at Bolden because he believed Bolden was reaching for a gun on a nearby nightstand or dresser. The jury instruction on the elements of felony murder required that the jury find, *inter alia*, that the killing of Bolden was done while in the commission of an aggravated burglary. Then, the aggravated burglary instruction required the jury to find that Brown entered the apartment with the intent to commit an aggravated assault. In turn, the elements instruction for aggravated assault involved the claim that Brown used a

7

deadly weapon to intentionally place Bolden in reasonable apprehension of immediate bodily harm.

The jury found Brown guilty of felony murder, aggravated burglary, and aggravated assault, and the district court imposed prison terms for the crimes on December 9, 2011, prompting a notice of appeal that same day. However, restitution was left open at the time of sentencing, and a final order of restitution was not filed until May 18, 2012, with the journal entry of judgment being filed on May 23, 2012.

## PREMATURE NOTICE OF APPEAL

As a preliminary matter, the State's brief questioned whether this court has jurisdiction to entertain Brown's appeal. It noted that, generally, an appellate court's jurisdiction is limited to final judgments; Brown's sentencing was not final when the notice of appeal was filed because of the pending determination on the amount of restitution; and, based upon *State v. Hannebohn*, 48 Kan. App. 2d 921, Syl. ¶ 3, 301 P.3d 340 (2013), the premature notice of appeal deprived this court of jurisdiction to hear the appeal. But the State has acknowledged through a Supreme Court Rule 6.09 (2013 Kan. Ct. R. Annot. 50) letter that *Hannebohn*'s holding was abrogated by *State v. Hall*, 298 Kan. 978, Syl. ¶ 4, 319 P.3d 506 (2014), where this court held:

> "In a criminal matter, a notice of appeal that seeks review of a conviction and a sentencing yet to be completed lies dormant until the final judgment including the complete sentence is pronounced from the bench, at which point the notice of appeal becomes effective to endow the appellate court with subject matter jurisdiction."

Accordingly, we will proceed to consider the merits of this appeal.

8

Brown states his first issue as a question of the district court's jurisdiction to convict him of felony murder and aggravated burglary.

*Standard of Review*

"[T]he determination of jurisdiction involve[s] questions of law over which this court's scope of review is unlimited." *State v. Burnett*, 297 Kan. 447, 451, 301 P.3d 698 (2013). More specifically, the question of the sufficiency of an information to confer jurisdiction is a question of law over which this court has unlimited review. *State v. Hooker*, 271 Kan. 52, 60, 21 P.3d 964 (2001).

*Analysis*

Brown's arguments on this issue present a moving target, beginning with an initial challenge to the sufficiency of the charging document before transitioning to a complaint about the insufficiency of the evidence and the lack of findings by the judge at the preliminary hearing. Moreover, as the State points out, Brown is raising this combination issue for the first time on appeal. We will do our best to break down the issue into tractable pieces.

*Sufficiency of the Charging Document*

Brown begins by pointing to *State v. Belcher*, 269 Kan. 2, 8, 4 P.3d 1137 (2000), for the proposition that a district court lacks jurisdiction to convict a defendant of a crime that is not specifically stated in the information or is not a lesser included offense of a charged crime, regardless of the evidence presented at trial. We agree with that proposition.

9

The complaint or information is the "jurisdictional instrument." *State v. Hawkins*, 285 Kan. 842, 848, 176 P.3d 174 (2008). If a crime is not specifically stated in the information or is not a lesser included offense of the charged crime, the district court does not have jurisdiction to convict a defendant of the crime, regardless of the evidence presented. *State v. Johnson*, 283 Kan. 649, 652, 156 P.3d 596 (2007). "A judgment for an offense where the court is without jurisdiction to decide the issue is void." 283 Kan. at 652.

The complaint or information "must contain 'a plain and concise written statement of the essential facts constituting the crime charged.' K.S.A. 22-3201(b)," and the charging document is generally sufficient when it is "'drawn in the language of the statute.'" *State v. Rojas-Marceleno*, 295 Kan. 525, 533-34, 285 P.3d 361 (2012). Moreover, an "information is sufficient if it clearly informs the defendant of the precise offense of which he or she is accused so that the accused may prepare a defense and so that a judgment thereon will safeguard the accused from a subsequent prosecution for the same offense." *State v. Hall*, 246 Kan. 728, 754, 793 P.2d 737 (1990), *overruled in part on other grounds Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003). In other words, an information or complaint is sufficient to invest the trial court with jurisdiction over a charged crime if it alleges all of the elements of the offense, if it sufficiently apprises the defendant of the facts against which he or she must defend, and if it is specific enough to safeguard the defendant against a subsequent prosecution for the same offense.

Here, the amended information charged Brown with felony murder, stating that he killed Bolden "while in the commission of, attempt to commit, or flight from, an inherently dangerous felony," followed by the listing of alternative underlying felonies, *i.e.*, aggravated burglary, aggravated battery, and/or aggravated assault. In turn, the amended information's charge of aggravated burglary stated that Brown unlawfully,

10

intentionally, knowingly, and without authority entered into or remained within a structure in which there were human beings, Ashley Green and Otis Bolden, with the intent to commit a felony—aggravated battery, aggravated assault, and/or murder in the first degree. Both charges in the amended information are drawn in the language of the respective statutes defining the crimes. See K.S.A. 21-3401(b) (felony murder); K.S.A. 21-3716 (aggravated burglary). Moreover, the information adequately notifies Brown of what he was accused of doing, so that he could not be prosecuted again for the same felony murder and aggravated burglary.

Brown's suggestion that the information had to specifically identify Bolden as the victim of the aggravated assault in order to support the aggravated burglary charge to in turn support the felony-murder charge is without merit. The State merely needed to prove that Brown entered into the apartment with the intent to commit an inherently dangerous felony; it did not have to convict him of the underlying felony. *Cf. Hall*, 246 Kan. at 749 (defendant need not be charged with or convicted of underlying felony to be convicted of felony murder). In short, the amended information was sufficient to invest the district court with jurisdiction to prosecute Brown for felony murder and aggravated burglary.

*Challenges to the Preliminary Hearing*

Brown attempts to argue that the information was defective based upon what transpired at the preliminary hearing. Specifically, he contends that the State failed to present evidence at the preliminary hearing that Brown intended to commit an aggravated assault against Bolden. Further, he argues that the district court did not bind over Brown for felony murder and aggravated burglary based upon the specific theory that the underlying felony to support the burglary was the aggravated assault against Bolden. For support in the record, he points to the district court's statement that the only aggravated assault charge involved Green. Brown's argument that shortcomings at the preliminary

11

hearing prevented the district court from acquiring jurisdiction over the criminal prosecution fails on multiple levels, both factual and legal.

First, Brown provides no authority to support the concept that a facially valid charging document can be rendered jurisdictionally defective because of latent defects in the preliminary hearing proceedings. See *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013) (failure to support a point with pertinent authority akin to failing to brief issue). To the contrary, "the sufficiency of a preliminary examination may be challenged only by a motion to dismiss or grant appropriate relief filed in the district court. *State v. Lashley*, 233 Kan. 620, 624, 664 P.2d 1358 (1983). Failure to challenge in this manner amounts to waiver." *State v. Butler*, 257 Kan. 1043, 1059-60, 897 P.2d 1007 (1995); see also *State v. Jones*, 290 Kan. 373, 381, 228 P.3d 394 (2010) ("As a general principle, after an accused has gone to trial and has been found guilty beyond a reasonable doubt, any error at the preliminary hearing stage is considered harmless unless it appears that the error caused prejudice at trial."). Obviously, if defects or shortcomings in the preliminary hearing proceedings can be waived, then they cannot be considered jurisdictional errors; subject matter jurisdiction cannot be conferred upon a district court by consent, waiver, or estoppel. See *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 639, 270 P.3d 1074 (2011), *cert. denied* 133 S. Ct. 158 (2012).

Next, we note that Brown did not challenge the preliminary hearing proceedings with a motion to dismiss or another appropriate motion in the district court. On appeal, he does not allege that any preliminary hearing error caused him prejudice at trial, and the record would not support such an allegation. Accordingly, Brown has waived his challenge to the preliminary hearing.

Nevertheless, we pause to note that Brown appears to believe the preliminary hearing must produce evidence of guilt beyond a reasonable doubt. But to the contrary,

the preliminary hearing is "the method utilized in Kansas to satisfy the Fourth Amendment right of a person to be free from extended pretrial restraint of liberty without a judicial determination of probable cause to support the detention or restriction on liberty." *Jones*, 290 Kan. at 379. The statute governing preliminary hearings, K.S.A. 22-2902(3), provides:  "If from the evidence it appears that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant, the magistrate shall order the defendant bound over to the district judge having jurisdiction to try the case." See *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 (2000). "'In order to prove probable cause, there must be evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *State v. Huser*, 265 Kan. 228, 230, 959 P.2d 908 (1998) (quoting *State v. Bockert*, 257 Kan. 488, 492, 893 P.2d 832 [1995]). Even if the evidence is weak, if some evidence tends to disclose the charged offense was committed by the defendant, the case should go to a jury. *Berg*, 270 Kan. at 238.

Here, the record contained sufficient evidence from which the court could reasonably infer that there was probable cause to believe that Brown did enter the apartment with an intent to threaten Bolden with bodily harm. Indeed, even though there was evidence to bind over Brown on the aggravated assault of Green based upon what happened after the entry into the apartment, it was obvious that Brown's intent when entering the apartment was to scare, beat, rob, or kill Bolden, not Green.

In sum, Brown is not entitled to relief on his jurisdictional challenge because the information charging felony murder and aggravated burglary was not defective, Brown failed to timely challenge the sufficiency of the preliminary hearing, there were no infirmities in the preliminary hearing proceedings, and the evidence at the preliminary hearing was sufficient to establish probable cause that Brown entered Bolden's apartment with the intent to commit an aggravated assault upon Bolden.

13

Brown makes two alternative means arguments based upon the allegations that he committed the charged crimes either as the principal or as an aider and abettor. First, he contends that being an aider and abettor for a crime is an alternative means of committing the crime, separate and distinct from committing the crime as a principal. Second, he contends that the aiding and abetting statute, K.S.A. 21-3205, provides six alternative means by which a person can aid and abet another to commit the crime. We recently rejected the first argument in *State v. Betancourt*, 299 Kan. 131, Syl. ¶ 1, 322 P.3d 353 (2014). The second argument is not an actual issue in this case.

*Standard of Review*

"Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." *State v. Brown*, 295 Kan. 181, Syl. ¶ 6, 284 P.3d 977 (2012).

*Analysis*

In *Betancourt*, this court considered whether aiding and abetting was an alternative means, specifically deciding "whether the aiding and abetting statute adds distinct, material elements to the crime of first-degree murder, or whether it's a factual circumstance that would prove the crime." 299 Kan. at 137. The court concluded that the aiding and abetting statute does not add distinct material elements to the definition of a charged crime and therefore does not create alternative means of committing that crime. 299 Kan. at 139-41; see *State v. Soto*, 299 Kan. 102, Syl. ¶ 2, 322 P.3d 334 (2014).

14

Brown provides no new argument or authority to persuade us to reconsider our reasoning in *Betancourt*. The cases upon which Brown relies, *State v. Cato-Perry*, 48 Kan. App. 2d 92, 284 P.3d 363 (2012), and *State v. Boyd*, 46 Kan. App. 2d 945, Syl. ¶ 5, 268 P.3d 1210 (2011), were both overruled by *Betancourt*. Accordingly, Brown's first alternative means argument fails.

Brown's second argument relies upon the statutory language of K.S.A. 21-3205: "(1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime." He contends that "aid, abets, advises, hires, counsels or procures" are six alternative means by which one can aid and abet.

While Brown presents an interesting theoretical question, it is not germane to this case. The jury in this case was instructed as follows:

> "A person who, either before or during its commission, intentionally *aids* another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime." (Emphasis added.)

In *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010), we said that "*Timley* required sufficiency of evidence to support each alternative means *upon which a jury is instructed*, in order to protect a criminal defendant's right to a unanimous jury verdict." (Emphasis added.) See also *Brown*, 295 Kan. at 194 (focus of alternative means rule is on jury instructions). Because the jury was instructed on only one of the statutory "means" by which a person can aid and abet, jury unanimity was guaranteed, and there was no sufficiency of the evidence question presented.

15

Brown argues that aiding and abetting is a separate and distinct crime because it contains a separate element to be proved, *i.e.*, the specific intent to aid and abet. Accordingly, he claims that instructing the jury on aiding and abetting was tantamount to charging him with a crime that was not contained in the information upon which he was tried. Brown also argues that the State's evidence only established that he acted as a principal; there was no evidence that he aided and abetted another to commit the crimes.

*Standard of Review*

Our resolution of the question of whether aiding and abetting is a distinct crime presents a question of law, subject to de novo review. *Cf. State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011).

*Analysis*

Brown acknowledges this court's long-standing precedent holding that aiding and abetting is not a distinct crime and therefore it need not be charged separately. See *State v. Robinson*, 293 Kan. 1002, 1038, 270 P.3d 1183 (2012); *State v. Amos*, 271 Kan. 565, Syl. ¶ 2, 23 P.3d 883 (2001); *State v. Green*, 254 Kan. 669, 686, 867 P.2d 366 (1994); *State v. Pennington*, 254 Kan. 757, Syl. ¶ 4, 869 P.2d 624 (1994); *State v. Goering*, 225 Kan. 755, 758, 594 P.2d 194 (1979); *State v. Smolin*, 221 Kan. 149, 152, 557 P.2d 1241 (1976). Brown argues that this line of cases is wrong because aiding and abetting requires proof of a separate element. But this argument has been raised and rejected before.

Just recently, in *Betancourt*, the defendant argued that "the elements contained in the aiding and abetting statute add material elements to the definition of the crime,"

making the elements of the two theories of guilt different. 299 Kan. at 138. In rejecting the argument, *Betancourt* opined:

"The more accurate approach is to consider the language of the aiding and abetting statute to be an assignment of criminal responsibility, rather than the creation of a distinct element of a crime. K.S.A. 21-3205 makes a person equally liable for crimes of others if there is a concerted effort to carry out the crime. It does not, for instance, establish two different crimes, one consisting of shooting a victim and the other consisting of handing a gun to someone for the purpose of shooting a victim. Similarly, it does not establish two different crimes for committing a murder, one committed by firing a gun and the other by driving the getaway car. Instead, the legislative intent, as expressed in the language of the aiding and abetting statute, is to make each individual who engages in a concerted action to carry out a crime equally culpable." 299 Kan. at 139.

The court concluded: "[A]s this court has previously decided, aiding and abetting does not constitute a separate crime in this state. It does not have to be charged separately prior to trial." 299 Kan. at 140.

Brown proffers nothing new that would persuade us to depart from our well-established precedent.

FELONY-MURDER JURY INSTRUCTION

Brown points out that the felony-murder instruction directed the jury to determine whether Bolden was killed during the commission of aggravated burglary. In turn, the aggravated burglary instruction asked the jury to find that Brown "knowingly entered a building" without authority, omitting the "remain within" language that was used in the information, so the jury was not instructed that the aggravated burglary was a continuing offense. Therefore, Brown argues, the felony-murder instruction was clearly erroneous

17

because it failed to instruct the jury to make the factual finding as to whether the underlying felony of aggravated burglary had been abandoned or completed prior to the killing. He contends that the jury could have found that his entry into the apartment completed the aggravated burglary crime, so the shooting of Bolden was not effected during the commission of the aggravated burglary.

*Standard of Review*

Brown raises this issue as an erroneous jury instruction claim. He suggests that the trial court should have, *sua sponte*, deviated from the pattern instructions and given the jury a modified felony-murder instruction that clarified, in some unspecified manner, that the jury could make the determination of whether the underlying felony had been abandoned or completed when the shooting occurred.

Brown did not object to the felony-murder instruction that was given at trial, triggering the clear-error rule. See K.S.A. 22-3414(3); *State v. Dobbs*, 297 Kan. 1225, 1237, 308 P.3d 1258 (2013). In determining whether an instruction is clearly erroneous, the court first determines whether the instruction was erroneous, which is a question of law subject to de novo review. *Betancourt*, 299 Kan. at 135. If the court determines the instruction was erroneous, then it must determine whether reversal is required because it is firmly convinced the jury would have reached a different result without the error. Reversibility is subject to unlimited review and is based on the complete record. The defendant must establish clear error under K.S.A. 22-3414(3). *Dobbs*, 297 Kan. at 1237.

*Analysis*

Brown's counsel acknowledges that in *State v. Bailey*, 292 Kan. 449, 455-56, 255 P.3d 19 (2011), he made virtually the same argument that he propounds here, to no avail. *Bailey* held that the pattern instruction on felony murder "properly instructs the jury and

18

fairly states the law" on the issue of "[w]hether an underlying felony has been completed prior to the commission of a felony murder." 292 Kan. at 455-56.

Brown's attempt to distinguish *Bailey* on the basis that it was an alternative means case is likewise unavailing. The question that *Bailey* answered in the affirmative was whether the pattern instruction properly informed the jury that "felony murder is committed only when the murder occurs during the commission of the underlying felonies." 292 Kan. at 457. We continue to find that the pattern instruction for felony murder adequately advises the jury about the temporal relationship between the killing and the underlying felony.

Brown was free to argue to the jury, consistent with the pattern felony-murder instruction that was given, that he had completed his aggravated burglary when he shot Bolden and, therefore, the murder was not effected during the commission of the inherently dangerous felony. Accordingly, the instruction was not erroneous, much less clearly erroneous.

NARROWING CHARGES IN JURY INSTRUCTIONS WITHOUT AMENDING INFORMATION

Finally, Brown presents another inscrutable issue based upon the variance between the crime elements instructions and the information with respect to the felony-murder and aggravated burglary charges. The information's charge of felony murder contained three alternative means for committing the underlying felony: aggravated burglary, aggravated battery, and/or aggravated assault. The jury instruction on the elements of felony murder only listed the underlying felony of aggravated burglary. The information's charge of aggravated burglary contained three alternative means for committing the underlying felony: aggravated battery, aggravated assault, and/or murder in the first degree. The jury instruction on the elements of aggravated burglary limited the underlying felony to the

19

aggravated assault of Bolden. Brown claims that it was error to narrow the crime elements in the jury instructions without first amending the information.

*Standard of Review*

For a standard of review, Brown recites the harmless error reversibility test of whether the error affected the outcome of the trial. Although Brown's argument on this issue blends a discussion of instructions, charging document amendments, and alternative means, we discern that his overarching complaint is that the crime elements jury instructions were erroneous for failing to match the information. Given that Brown did not object to the jury instructions, the clearly erroneous standard of review is used once again.

*Analysis*

Brown bases his complaint on some loose language in our cases stating that "[t]he general rule [is] that instructions should be confined to issues made by the pleadings and should not be broader *or narrower* than the information." (Emphasis added.) *State v. Booker*, 197 Kan. 13, 15, 415 P.2d 411 (1966); see *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009); *State v. Hemby*, 264 Kan. 542, 548, 957 P.2d 428 (1998); *State v. Turbeville*, 235 Kan. 993, 997, 686 P.2d 138 (1984). *Booker* cites to 23A C.J.S., Criminal Law § 1311, p. 759 as support for the "general rule" that instructions should not be broader or narrower than the "issues" contained in the pleadings. 197 Kan. at 15.

But that general proposition cannot mean that the jury must always be instructed on all alternative means contained in the charging document. Not only would it confuse the jury to be instructed on a means for which there was no trial evidence, it would violate the super sufficiency rule from *Wright*, which requires sufficient evidence "to support each alternative means upon which a jury is instructed." 290 Kan. at 201.

20

Reversal for insufficient evidence in an alternative means case is avoided by the district court when it only instructs the jury on the means for which there was evidence presented at the trial. Indeed, we have encouraged trial judges to perform that gatekeeping function of matching the jury instructions to the evidence presented at trial. *Cf. State v. Grissom*, 251 Kan. 851, 892, 840 P.2d 1142 (1992) (where evidence insufficient to support alternative legal theory of liability, court should remove that theory from jury's consideration).

Accordingly, the narrowed jury instructions on the elements of felony murder and aggravated burglary were not erroneous. That determination obviates the need for us to find that the jury would not have reached a different result with all of the alternative means in the crime elements instructions, no matter how obvious such a conclusion might seem.

Brown's alleged requirement that an amendment to the information must be a condition precedent to the trial court's giving a jury instruction listing less than all of the alternative means contained in the information would place form over substance. The purpose of an information is twofold: to inform the defendant of the nature of the accusation against him or her and to provide the district court with jurisdiction. See *State v. Jones*, 290 Kan. 373, 383-84, 228 P.3d 394 (2010); *State v. Johnson*, 283 Kan. 649, 652, 156 P.3d 596 (2007). One cannot intuit an obvious prejudice where a defendant has been informed that he or she must be prepared to defend against three alternative means at trial and then, after the conclusion of the trial the accusation is reduced to only one means for jury deliberation. The State did not add any new charges or present any new facts that would serve to surprise Brown. *Cf. State v. Wade*, 284 Kan. 527, 541-42, 161 P.3d 704 (2007) ("[W]here a jury is instructed to convict a defendant in a manner or upon a theory which was not identified in the charging document, an analysis of whether the defendant had sufficient notice to pass due process muster is in order.").

21

Brown appears to argue that it was prejudicial to eliminate the error of unsupported alternative means because he could have used that error to seek reversal of his convictions. But it would be counterintuitive to say that a defendant is prejudiced by the court's taking action to make his or her trial more fair. We decline to do so here.

In conclusion, Brown has failed to show any grounds for the reversal of his convictions and, consequently, we affirm the jury's verdicts.

Affirmed.

MORITZ, J., not participating.

DAVID J. KING, District Judge, assigned.[1]

[1]**REPORTER'S NOTE:** District Judge King was appointed to hear case No. 108,218 vice Justice Moritz pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.