NOT DESIGNATED FOR PUBLICATION

No. 113,414

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHAD ERIC ASHE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Cherokee District Court; KURTIS I. LOY, judge. Opinion filed February 5, 2016. Reversed and remanded with directions.

*Jacob A. Conard*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*: The State appeals the district court's decision dismissing a charge of aggravated battery against Chad Eric Ashe. The district court determined that there was insufficient evidence presented at the preliminary hearing to bind Ashe over for trial on this charge. Based on our review of the record, however, we conclude that the State presented sufficient circumstantial evidence to cause a person of ordinary prudence and caution to entertain a reasonable belief that Ashe committed aggravated battery on Paul Nixon by striking him on the head and causing him to suffer significant injuries. Thus, we reverse the order dismissing the charge of aggravated battery and remand this case to the district court with instructions to bind Ashe over for trial on this charge.

1

On the evening of April 8, 2013, Nixon was drinking beer at the Hideaway Shack—a tavern in Baxter Springs. After a couple of hours, Ashe and his father—who Nixon knew—also arrived at the bar. Because Nixon knew that Ashe had recently broken up with his girlfriend, he told Ashe that "it would be all right and . . . not to worry about it." Evidently, Ashe was offended and upset about Nixon's comment.

At some point later in the evening, Nixon was talking to Ashe's father. During the conversation, Nixon referred to Ashe's grandfather—who had recently passed away—as Don. Ashe, who was sitting about 20 feet away, overheard this and told Nixon, "'Asshole, I told you his name was Jerry.'" Subsequently, Nixon saw that Ashe still seemed to be upset. According to Nixon, he patted Ashe on the shoulder and said, "'Just calm down, everything will be okay.'" Ashe, however, claimed that Nixon was hitting him in the ribs.

Thereafter, Ashe—who had also been drinking beer—took off his shirt, went outside the bar, and started yelling. Ashe walked down the highway near the bar and then returned about 5 to 10 minutes later. After he returned, Ashe and Nixon yelled at each other through the tavern's door. At the time, Nixon was still in the bar sitting with Ashe's father.

Subsequently, Nixon went outside and Ashe took a swing at Nixon and missed. Ashe and Nixon then started wrestling with one another, and Nixon was able to pin Ashe to the ground on his stomach. At that point, a man Nixon did not know—but who he believed to be with Ashe that night—began choking Nixon from behind. In response, one of Nixon's friends pulled the man off of Nixon.

Eventually, Nixon told Ashe that he would let him get up off the ground if he promised not to hit him. After Nixon let Ashe stand up, the two men shook hands and

leaned forward to butt heads in a nonaggressive manner. Nixon then looked over his right shoulder and saw his friend wrestling on the ground by at the edge of the parking lot with the man who had choked him. Just as he turned away from Ashe, Nixon was punched in the face. At that time, there were several people outside but only four had been involved in the conflict—Nixon, Ashe, and the two men who were wrestling on the ground at the time Nixon was punched.

The punch knocked Nixon to the ground, and he had to be helped back inside the bar. Nixon's eye immediately swelled, and he could not close his mouth. Nixon's father drove him to a hospital in Joplin, Missouri, and because his swelling was so bad, he was immediately transferred to a hospital in Springfield. At the hospital, it was determined that Nixon's orbital socket was broken, but he was too swollen for surgery at that time.

A few days later, Nixon returned to Springfield for surgery. As Nixon was travelling back to the hospital for surgery, he received a telephone call from Ashe. According to Nixon, Ashe "apologized and told [him] he was going to try and get his medicine lined out." However, Ashe did not specifically admit that he was the person that had punched Nixon. After receiving the telephone call, Nixon did not hear from Ashe again.

In Springfield, Nixon had surgery on his eye and cheek bone. During the surgery, he developed a blood clot, which required doctors to insert a tube behind his eye. Nixon also suffered permanent nerve damage that causes part of his face to be numb. He did not lose his vision, but his eyesight is not as good as it was before. It is anticipated that Nixon will eventually have to have more surgery to tighten the muscles that hold his eye into the socket, which had to be stretched during surgery.

Several months after the incident, the State charged Ashe with one count of aggravated battery, and the district court conducted a preliminary hearing on February 2,

3

2015. At the preliminary hearing, Nixon testified about the events on the night he was injured. In doing so, he candidly admitted that he never actually saw who punched him in the face. Although he testified that there were other people standing outside the bar at the time he was struck, Nixon stated that he knew nearly everyone who was there other than the man that had choked him and was wrestling on the ground with his friend at the time. He also testified about the telephone call that Ashe made to him a few days later.

After Nixon testified, the State asked for leave to amend the complaint to add a count of criminal threat. The State also argued that Nixon's testimony was sufficient to establish probable cause that it was Ashe who struck him in the face. In response, defense counsel argued that Nixon's testimony was not sufficient to support either a charge of criminal threat or a charge of aggravated battery.

At the conclusion of the preliminary hearing, the district court stated: "From what I heard that [Nixon's injuries] happened when he was cheap shotted by somebody he has no idea that did it." The district court then found that there was insufficient evidence that it was Ashe who punched Nixon. The district court, however, determined that there was sufficient evidence that Ashe committed battery against Nixon prior to the time he was hit in the face.

According to the district court, it could not "speculate to the point of saying that it was probably Mr. Ashe" who punched Nixon notwithstanding the fact that he had called Nixon to apologize several days after the incident. The district court also denied the State's request to amend the complaint to add a charge of criminal threat. Thereafter, the district court arraigned Ashe on the charge of battery, accepted his plea of not guilty, and scheduled the case for trial.

On February 13, 2015, the State filed a notice of appeal only pertaining to the district court's dismissal of the aggravated battery charge. The notice of appeal became

4

effective on March 11, 2015, when the district court entered its journal entry setting forth its findings and conclusions from the preliminary hearing. See Supreme Court Rule 2.03(a) (2015 Kan. Ct. R. Annot. 13). After the State docketed its appeal, this court issued a show cause order in which it asked the parties to address the finality of the case in light of the battery charge that remained pending against Ashe. Although the State responded to the order to show cause, Ashe did not do so. After reviewing the State's response, the appeal was retained.

ANALYSIS

Our review of a district court's probable cause determination at a preliminary hearing is unlimited. See *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011). When the State appeals from the dismissal of a charge or charges, we must determine whether the evidence presented at the preliminary hearing was sufficient to cause a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime charged. In making this determination, we must draw reasonable inferences from the evidence presented in a light most favorable to the State. "Moreover, the evidence needs only to establish probable cause, not guilt beyond a reasonable doubt. The court's role is not to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote.' [Citation omitted.]" 292 Kan. at 171-72.

Accordingly, to bind over a defendant for trial on aggravated battery, the evidence presented—viewed in the light most favorable to the State—must establish probable cause to believe that the defendant knowingly caused great bodily harm to or disfigurement of another person. See K.S.A. 2015 Supp. 21-5413(b)(1)(A) (definition of aggravated battery); K.S.A. 2015 Supp. 22-2902(3) (preliminary hearing standard). Moreover, the Kansas Supreme Court has held that "[e]ven if the evidence is weak, if some evidence tends to disclose the charged offense was committed by the defendant, the

case should go to a jury. [Citation omitted.]" *State v. Brown*, 299 Kan. 1021, 1030-31, 327 P.3d 1002 (2014); see also *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012).

On appeal, the State contends that it presented sufficient circumstantial evidence to establish probable cause of the alleged offense. The Kansas Supreme Court has recognized that

> "there is no distinction between direct and circumstantial evidence in terms of probative value. [Citation omitted.] 'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.' [Citation omitted.]" *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015).

In response, Ashe contends that there was not sufficient evidence presented at the preliminary hearing to establish probable cause that he committed aggravated battery on Nixon. Specifically, Ashe argues that the only circumstantial evidence offered by the State in his case was that he had initially been the aggressor in a fight with Nixon. Further, Ashe maintains that his call to apologize to Nixon was not circumstantial evidence that he had landed the blow that caused Nixon's serious injuries but was merely a general apology.

Ashe disregards the evidence presented at the preliminary hearing that Ashe had shown aggressive behavior throughout the evening against Nixon; that Ashe had swung at Nixon when he came out of the bar; that Nixon had him pinned on the ground only moments before he was blindsided by a punch to the face; and that Nixon had just turned his back on Ashe before being stuck. Ashe also disregards the fact that the evidence presented at the preliminary hearing identified only four people who were involved in the fight outside the bar and that the other two men were wrestling on the ground by the edge

6

of the parking lot at the time Nixon was punched. As such, all of the known participants in the fight were accounted for when Nixon was struck in the face.

It was understandable that Nixon could not identify who had actually struck him due to the nature and viciousness of the attack. But direct evidence is simply not required to bind someone over for trial. Rather, we conclude that the circumstantial evidence presented at the preliminary hearing—when viewed in the light most favorable to the State—was sufficient to cause a person of ordinary prudence and caution to reasonably believe that it was Ashe who violently punched Nixon in the face and that this act constituted aggravated battery.

We, therefore, conclude that the district court's order dismissing the charge of aggravated battery should be reversed and that this case should be remanded for Ashe's arraignment on the charge of aggravated battery.

Reversed and remanded with directions.