NOT DESIGNATED FOR PUBLICATION

No. 120,709

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DIANA LYNN HAWKINS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed September 27, 2019. Affirmed.

*Amy E. Norton*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Jacob Nowak*, assistant public defender, of Salina Regional Public Defender's Office, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: Following a traffic stop, Diana Lynn Hawkins was charged with several drug-related crimes and a traffic infraction. Hawkins filed a motion to suppress the evidence upon which the drug-related crimes were based, alleging that the stop and detention of her vehicle violated her federal and state constitutional rights. The district court agreed and suppressed all evidence arising from the traffic stop. Having heard no other evidence, the district dismissed all charges against Hawkins for lack of probable cause. The State now appeals, claiming that the district court erred in granting Hawkins'

1

motion to suppress and in dismissing the complaint for lack of probable cause. Finding no error, we affirm.

In May 2018, the Salina Police Department began receiving tips (through its Crime Stoppers program) from an unknown person alleging that Hawkins was selling marijuana. The tipster specified that, on a somewhat regular basis, Hawkins was driving a white Dodge Journey to Colorado and purchasing marijuana. After returning to Salina, Hawkins purportedly sold that marijuana from her vehicle either at night, while she delivered papers for the Salina Journal, or during the day while she worked at the Salina Country Club. The tipster also claimed that Hawkins stored the marijuana in a black suitcase that she left inside the vehicle. Through follow-up phone calls, Salina police eventually were able to identify the tipster. The information, and the identity of the tipster, was passed on to Detective Rick Garcia who was a member of the drug task force. Garcia used the information provided to pull Hawkins' address from local police reports. Garcia drove to the address and observed a vehicle matching the tipster's description parked outside of a residence. Garcia also drove to the parking lot of the Salina Country Club. At this point, Garcia did nothing further to verify the veracity of the tipster or his information.

That changed on June 14, 2018, when Officer Micah Bunce was dispatched to the address associated with Hawkins to perform a welfare check on an elderly man who had failed to show up for a doctor's appointment. The alert showed up on Detective Garcia's computer and he requested that dispatch have the responding officer, Bunce, contact him on his way to the call. Bunce did so and, after being advised of the tipster's information, agreed to try and verify additional details while on the scene. In particular, Garcia wanted Bunce to look for the black suitcase—the one Hawkins was purportedly using to store marijuana—in the back of the white Dodge Journey.

2

When Officer Bunce arrived at the scene, he observed the subject of the welfare check talking with another officer. The elderly man and the other officer were standing next to the white Dodge Journey that Detective Garcia had described. As Bunce approached, he reportedly detected an odor of marijuana but was unsure if it was coming from the vehicle, the elderly man, or the house. Bunce was able to look through the windows of the white Dodge Journey, where he observed a large black suitcase in the back along with a piece of notebook paper. The notebook paper had a list of columns with common denominations that Bunce later testified are often used for drug sales. Bunce testified that he believed the paper was an "owe sheet."

After a few minutes, the elderly man stepped away from the vehicle and returned to the residence. Officer Bunce reported that the marijuana odor remained present near the vehicle. Soon after the elderly man left the vicinity of the vehicle, Hawkins emerged from the residence and told the officers that she needed to leave for work. They allowed her to do so, and she drove away in the white Dodge Journey. As she was leaving, Bunce called Detective Garcia and reported his observations. Garcia asked Bunce to follow Hawkins and, if possible, to initiate a traffic stop. Bunce followed that directive a few blocks later, at the corner of Ninth and Elm, when he witnessed what he believed to be a traffic infraction. Specifically, Bunce said he observed Hawkins make a left-hand turn from westbound Elm into the left most lane of southbound Ninth. Bunce went on to say that, at the same time, another vehicle was traveling eastbound on Elm with its turn signal on, indicating that it intended to turn right onto southbound Ninth, presumably into the right most lane. In Bunce's opinion, Hawkins turned in front of the eastbound vehicle, forcing it to slow down and causing the driver to point at Hawkins.

After observing Hawkins make the left turn onto southbound Ninth, Officer Bunce initiated a traffic stop and pulled Hawkins over for making an improper turn and failing to yield the right-of-way to the eastbound vehicle. As Bunce approached the vehicle, he reported that he could smell the odor of raw marijuana, which grew stronger when

3

Hawkins rolled down her window to provide him with the documentation he requested. While Bunce was running her driver's license, Officer Michael Baker arrived with his K-9 dog, Karma. Baker deployed Karma around the white Dodge Journey and the dog indicated, which meant that the dog detected the odor of illegal narcotics. Based on that indication, Baker searched the vehicle and found: (1) several canisters of suspected marijuana; (2) a digital scale with small amounts of suspected marijuana on it; (3) a notebook with names and dollar amounts written in it like some sort of ledger; (4) a vacuum sealer; and (5) approximately 100 new, Ziploc-style sandwich baggies. Most of the canisters and the vacuum sealer were found inside the black suitcase. The rest of the items were scattered around the rear cargo area of the white Dodge Journey.

In light of the evidence discovered, the State charged Hawkins with a number of drug-related crimes. Hawkins filed a motion to suppress, alleging that the stop and detention of her vehicle was without legal justification and therefore in violation of her state and federal constitutional rights. On January 18, 2019, the district court held a hearing on Hawkins' motion. The motion hearing was held in conjunction with the preliminary hearing. Detective Garcia, Officer Bunce, and Officer Baker all testified to the facts set forth above. After hearing the testimony and considering the arguments, the district court found that there was no evidence to show that Hawkins committed a traffic violation; therefore, Bunce lacked an objectively reasonable reason to initiate a traffic stop. The court granted Hawkins' motion and suppressed all evidence resulting from the traffic stop. Having heard no other evidence, the district court dismissed the charges for lack of probable cause. The State appeals.

ANALYSIS

*Motion to suppress*

The State argues the district court erred in finding that Officer Bunce lacked legal justification to initiate a traffic stop of Hawkins' vehicle. The standard of review for a district court's decision on a motion to suppress has two parts. Appellate courts review the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusions, however, are reviewed using a de novo standard. In reviewing the factual findings, appellate courts do not reweigh the evidence or assess the credibility of witnesses. When the material facts supporting the district court's decision on a motion to suppress are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court exercises unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." See also *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (incorporating Fourth Amendment to states through Due Process Clause of Fourteenth Amendment). Section 15 of the Kansas Constitution Bill of Rights contains similar language and provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). A traffic stop is a seizure of a driver within the meaning of the Fourth Amendment. *State v. Mitchell*, 265 Kan. 238, 241, 960 P.2d 200 (1998).

To comply with the strictures of the Fourth Amendment and section 15 of the Kansas Constitution Bill of Rights, an officer who initiates a traffic stop must have a reasonable suspicion, based on articulable facts, that the driver has committed, is

committing, or is about to commit a crime. K.S.A. 2018 Supp. 22-2402; see *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). A determination regarding whether a suspicion is reasonable must be based on the totality of circumstances and "is viewed in terms as understood by those versed in the field of law enforcement." *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 (1993). But an officer's subjective motive does not invalidate objectively reasonable behavior under the Fourth Amendment as long as a traffic violation actually occurred. So an officer's stop of an individual is not invalid simply because it was a pretext for a drug search if the driver truly committed a traffic infraction. See *Whren v. United States*, 517 U.S. 806, 812, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *State v. Jones*, 300 Kan. 630, 638, 333 P.3d 886 (2014); *State v. Lewis*, 54 Kan. App. 2d 263, 270, 399 P.3d 250 (2017).

On appeal, the State argues in its brief that Officer Bunce was justified in stopping Hawkins because he reasonably suspected that she was engaged in criminal activity, namely possessing and distributing marijuana. In particular, the State points to the two conversations between Bunce and Detective Garcia regarding the tipster's information, arguing that the combined confirmation of some of the tipster's facts was enough to establish the reasonable suspicion necessary to stop Hawkins. In other words, the State argues that Bunce was not executing a traffic stop but instead was executing an investigatory, or *Terry*, stop. The State's argument is undercut, however, by Bunce's own testimony, in which he specifically stated that he stopped Hawkins because "[s]he made a left-hand turn off the street and there was a vehicle oncoming. The vehicle had had [*sic*] to slow down. The driver of the vehicle even pointed at [Hawkins'] vehicle. So she didn't yield the right of way." But after reviewing the evidence, including dash cam video from Bunce's patrol car, the district court determined that no traffic violation occurred. The State has not contested that finding on appeal and therefore has waived any argument that Bunce's articulated reason for stopping Hawkins was objectively reasonable. See *State v. Williams*, 298 Kan. 1075, 1083, 319 P.3d 528 (2014) ("When a litigant fails to adequately brief an issue it is deemed abandoned.").

6

*Dismissal*

Because the suppression hearing was held in conjunction with the preliminary hearing, the State also argues that the district court erred when, after suppressing the evidence obtained from the illegal stop, it dismissed all charges against Hawkins for lack of probable cause. To bind a defendant over at a preliminary hearing, the district court must find that the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt. *State v. Brown*, 299 Kan. 1021, 1030, 327 P.3d 1002 (2014). On appeal from the decision to grant or deny a motion to dismiss filed after the preliminary hearing, an appellate court reviews the district court's probable cause finding de novo. In reviewing the evidence, the appellate court draws inferences in favor of the State. The evidence need only show probable cause, not guilt beyond a reasonable doubt. Even if the evidence is weak, the defendant should be bound over for trial if the evidence tends to establish that the offense was committed and that the defendant committed it. *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012).

We have found the district court did not err in finding an absence of reasonable suspicion to detain Hawkins based on a traffic infraction. We also have found the State did not preserve its argument that Officer Bunce had reasonable suspicion to detain Hawkins based on this belief that she possessed and was distributing marijuana. And finally, we have found the district court did not err in suppressing the evidence discovered as a result of the traffic stop. Without this evidence, there are no facts to establish probable cause to support the traffic offense or the drug-related charges lodged against Hawkins. Therefore, we affirm the district court's decision to dismiss all charges against Hawkins for lack of probable cause.

Affirmed.