No. 82,515

STATE OF KANSAS, *Appellant*, v. DAYTON ALEXANDER BERG, *Appellee*.

(13 P.3d 914)

Opinion filed December 8, 2000.

*Christina Trocheck*, assistant county attorney, *Julie McKenna*, county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellant.

*James D. Sweet*, of Sweet and Sheahon, of Salina, was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by the State of the trial court's dismissal of a complaint charging the appellee, Dayton Alexander Berg, with one count of aggravated battery pursuant to K.S.A. 21-3414(a)(1)(A). The trial court found that the State had failed to present sufficient evidence to show that Berg had intentionally caused great bodily harm to the victim, Megan Dodder. This court has jurisdiction pursuant to K.S.A. 22-3602(b)(1).

At the conclusion of the preliminary hearing, the trial court refused to bind Berg over for trial on any level of aggravated battery. In doing so, the trial court commented that the evidence presented

only showed a simple battery, and the State declined to proceed on simple battery. The State filed a timely appeal.

The State argues that the trial court erred in dismissing the charge of aggravated battery against Berg as there was sufficient evidence presented at the preliminary hearing to show that Berg intentionally caused great bodily harm to Dodder.

Pursuant to K.S.A. 22-2902(3), a defendant shall be bound over if the evidence shows that a felony has been committed and there is probable cause to believe that the felony has been committed by the defendant. *State v. Chapman*, 252 Kan. 606, Syl. ¶ 3, 847 P.2d 1247 (1993); *State v. Puckett*, 240 Kan. 393, Syl. ¶ 2, 729 P.2d 458 (1986). The evidence need not prove guilt beyond a reasonable doubt, only probable cause. *State v. Sherry*, 233 Kan. 920, 935, 667 P.2d 367 (1983). Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. *Puckett*, 240 Kan. 393, Syl. ¶ 1. The trial court must draw inferences favorable to the prosecution from the evidence presented at the preliminary examination. *Sherry*, 233 Kan. at 935. The magistrate should not be concerned with the fact that the possibility of conviction is remote or virtually nonexistent. *State v. Bockert*, 257 Kan. 488, 492, 893 P.2d 832 (1995). Where the evidence tends to disclose that the offense charged was committed and the defendant committed it, the question is one for the jury to decide, even though the evidence is weak. *State v. Zimmerman & Schmidt*, 233 Kan. 151, Syl. ¶ 3, 660 P.2d 960 (1983).

The State may appeal from an order dismissing a complaint pursuant to K.S.A. 22-3602(b)(1). An appellate court follows the same standard for weighing evidence as the magistrate in the preliminary examination. *Sherry*, 233 Kan. at 934-35. We examine that evidence de novo, placing us in the same position as the trial court and using the same standard to weigh the evidence as the trial court used, that is, whether the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. See *State v. McNeal*, 262 Kan. 551, 552, 940 P.2d 34 (1997).

Berg was charged with one count of aggravated battery pursuant to K.S.A. 21-3414(a)(1)(A), which provides:

"(a) Aggravated battery is:
(1)(A) Intentionally causing great bodily harm to another person or disfigurement of another person."

In dismissing the aggravated battery charge against Berg, the trial court stated:

"[T]he court refuses to bind Mr. Berg over on aggravated battery or even some of the lessers that could be found in 3414. The court would tell you it considered (a)(2)(b): Recklessly causing bodily harm to another—but that really—doesn't really fit the definition. But the definition only that fits from the evidence the court heard today is battery, recklessly causing bodily harm to another. And the court would, at least, issue an Information with regards to that or a Complaint against Dayton Alexander Berg on simple battery, Class B misdemeanor."

When questioning Officer Lind regarding statements made by Berg, the following took place:

"Q. Okay. And then he picked her up off of the ground and dropped her, is that correct?
"A. Yes.
"Q. He never told you that he threw her down on the ground, is that correct?
"A. No; he never.
"Q. Never told you that he was intending to throw her to the ground, did he?
"A. No."

When questioning Lind about statements made by Dodder, the following took place:

"Q. Officer, you talked to Megan Dodder and she had indicated to you that during this incident that her and her friends had all been joking around, is that correct?
"A. Yes.
"Q. Okay. And that they had been wrestling around, is that correct?
"A. Yes.
. . . .
"Q. Okay. Did—Megan never told you that he intended to throw her to the ground?
"A. No."

Dodder testified regarding her perception of Berg's intent. On cross-examination, the following took place:

"Q. Okay. And at that time were you and he wrestling with each other?
"A. Uh-huh.

"Q. Were either of you angry at each other?
"A. No.
"Q. Did Mr. Berg release you or drop you?
"A. Uh-huh.
"Q. Okay. How did that happen? Can you physically describe how he released you?
"A. Yeah. He had me around my waist.
"Q. Would you stand up and show to the court, demonstrate?
"A. He had me around my waist and he like picked me up. And I was probably two or three feet from the floor or maybe not that high. Maybe one, two feet. I don't know. It was real strange. He picked me up and I was wrestling around. We were playing and I was trying to get down and Jeremy was standing off like in the back. When I went to like get—get released from his arms, I got to squirming too much and he dropped me and I came down on my shoulder and that's how it happened.
"Q. Did he—does he throw you down?
"A. No.
"Q. Okay. Did you feel like he was intending to hurt you?
"A. No.
"Q. Did you believe that he intended to hurt you?
"A. No.
"Q. Okay. Do you recall—do you believe that this was simply a freak accident?
"A. Uh-huh."

Although the State argues that Berg "threw" Dodder to the ground, the testimony elicited at the preliminary hearing indicates that Dodder was dropped and not thrown. The testimony also reveals that the atmosphere surrounding the accident was "joking" and not serious. We give great deference to the trial court's determination of the quality of the evidence.

After reviewing the record, we hold that the trial court did not err in refusing to bind Berg over for trial on the aggravated battery charge as there was no probable cause to believe that Berg had any intent to cause great bodily harm when Dodder was injured.

Affirmed.