No. 102,521

STATE OF KANSAS, *Appellee*, v. MONTREZ D. WASHINGTON, *Appellant*.

(268 P.3d 475)

Opinion filed January 20, 2012.

*Carl F.A. Maughan*, of Maughan & Maughan, LC, of Wichita, argued the cause, and *Bryan C. Hitchcock*, of the same firm, was with him on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Montrez D. Washington was charged with first-degree felony murder under K.S.A. 21-3401(b) and attempted aggravated robbery under K.S.A. 21-3301 and K.S.A. 21-3427. After a jury convicted Washington on both counts, he directly appeals. He contends that (1) insufficient evidence was presented at his preliminary hearing and (2) the *Allen*-type jury instruction given at his trial was clearly erroneous. We reject his arguments and affirm,

finding that the evidence was sufficient and the instruction, even if erroneous, did not affect the jury's verdict.

The charges stemmed from the January 3, 2007, killing of Donyel Bagsby during an attempted aggravated robbery. At that time, Washington was 17 years old. After filing charges, the State filed a joint motion for adult prosecution and preliminary examination. The motion was presented to the district court at an evidentiary hearing. Based on the evidence, the district court found Washington should be prosecuted as an adult. The court then granted the State's motion to consider the evidence for purposes of a preliminary examination as provided for in K.S.A. 22-2902(3). The court found probable cause to believe Washington committed the charged offenses and bound Washington over for arraignment in adult criminal court.

The case proceeded to a trial, which ended in a mistrial. At the second trial, the jury found Washington guilty on both counts. The district court sentenced Washington to life imprisonment without the possibility of parole for 20 years for the felony-murder conviction, to be served concurrently with a term of 32 months' imprisonment for the attempted aggravated robbery conviction.

Washington directly appeals his convictions. This court has jurisdiction under K.S.A. 22-3601(b)(1).

Additional facts are provided below where necessary.

ISSUE 1: Was the evidence presented at Washington's preliminary hearing sufficient to bind him over for trial?

Washington first contends the evidence presented at the hearing on the State's motion for adult prosecution and preliminary examination was insufficient to support a finding of probable cause that attempted aggravated robbery and felony murder were committed and that Washington committed those felonies.

Under K.S.A. 22-2902(3), the magistrate at a preliminary hearing examines the evidence to determine (1) whether a crime has been committed and (2) whether there is probable cause to believe that the accused committed the crime. *State v. Valladarez*, 288 Kan. 671, 677, 206 P.3d 879 (2009). The evidence need not prove guilt beyond a reasonable doubt, only probable cause. *State v.*

*Sherry*, 233 Kan. 920, 935, 667 P.2d 367 (1983). "Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 (2000) (citing *State v. Puckett*, 240 Kan. 393, Syl. ¶ 1, 729 P.2d 458 [1986]). In determining if this standard is satisfied, the judge at a preliminary hearing must draw inferences favorable to the prosecution from the evidence presented and should not be concerned with sufficiency of the evidence to support a conviction. *State v. Bockert*, 257 Kan. 488, 492, 893 P.2d 832 (1995); *Sherry*, 233 Kan. at 935. Even where the evidence is weak, the defendant should be bound over for trial if the evidence tends to disclose that the offense charged was committed and that the defendant committed it. *Berg*, 270 Kan. at 238.

The sufficiency of a preliminary examination may be challenged only by a motion to dismiss filed in the district court. "Failure to challenge in this manner amounts to waiver." *State v. Butler*, 257 Kan. 1043, 1059-60, 897 P.2d 1007 (1995). Washington appropriately filed a motion to dismiss before the district court, arguing the evidence was insufficient to establish probable cause that he committed attempted aggravated robbery and, therefore, that he committed a felony murder. The district court denied Washington's motion. On appeal from that ruling, an appellate court reviews the district court's probable cause finding at a preliminary hearing de novo. See *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011).

On appeal, Washington contends a de novo review will establish that the evidence presented at the preliminary hearing failed to prove (1) the "taking" element of the crime, (2) the element of force or threat of bodily harm, and (3) that Washington had the intent to commit the crime. While Washington acknowledges that he was charged with *attempted* aggravated robbery, he maintains that rather than establish a failure to complete a robbery, the evidence presented at the preliminary hearing "established that a robbery did not occur." Washington then contends that because the evidence failed to establish probable cause for attempted aggravated robbery, the evidence necessarily failed to establish probable cause for felony murder.

In response, the State argues a de novo review of the evidence presented at the hearing establishes the crimes of attempted aggravated robbery and felony murder occurred and probable cause that Washington, acting as an aider and abettor, committed the crimes. We agree with the State.

To begin our analysis of Washington's arguments, it is helpful to examine the elements of the charged crimes. Aggravated robbery is defined in K.S.A. 21-3427 as a robbery "committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." A robbery is defined in K.S.A. 21-3426 as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." Because Washington was charged with attempted aggravated robbery, it is not necessary that the robbery be completed. "An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-3301(a).

The other charge against Washington is felony murder. Felony murder is the killing of a human being in the commission of, *attempt to commit*, or flight from an inherently dangerous felony. K.S.A. 21-3401(b). Aggravated robbery is an inherently dangerous felony. K.S.A. 21-3436(a)(4).

To establish probable cause that these crimes had been committed, the State presented the testimony of one of Washington's accomplices, Samuel Toliver III, who testified pursuant to a plea arrangement. Toliver testified that on the afternoon of the killing, he, Washington, Ed-Rick Edwards, and Demario Cooks were riding around in Edwards' car when Edwards suggested "doing a lick," *i.e.*, a robbery. At some point, they decided that the target of the robbery would be Bagsby because he sold marijuana. Washington knew where Bagsby lived and provided directions. The four men developed a plan where Toliver would knock on Bagsby's door and then the others would rush in once Bagsby opened it.

When the group arrived at Bagsby's home, Toliver was not armed, but Edwards, Washington, and Cooks were. Earlier, once the group had decided to commit a robbery, they stopped by an

apartment and picked up guns for Washington and Cooks; Edwards already had a gun.

Once the group arrived at the Bagsby home, Toliver knocked on the door. Bagsby's wife answered, and Toliver asked if they sold "weed." Bagsby then approached the door, and Toliver asked him if he had a "QP," meaning a quarter pound of marijuana. At this point Edwards entered the house. Edwards and Bagsby scuffled, and Bagsby was fatally shot. Bagsby slammed shut the front door during the struggle, leaving Toliver in the house. Toliver testified that Washington and Cooks were standing to the side of the door when Toliver entered the house.

Bagsby's wife, Kamilah Bagsby, also testified at the preliminary hearing. Kamilah testified to seeing only two individuals inside her house during the incident. She also testified that she heard additional shots fired outside at the house after Bagsby closed the door.

A police officer who reported to the scene observed 10 to 12 males walking together; Washington was among this group. The officer testified that he found two handguns in the vicinity where he located Washington.

These facts are very similar to those in *State v. Calvin*, 279 Kan. 193, 194, 105 P.3d 710 (2005), where the defendant raised the same arguments as does Washington. In *Calvin*, John Calvin was convicted of felony murder and attempted robbery. An accomplice in the crime, Benjamin Russell, testified at Calvin's trial. He told the jury that on the night of the incident, he drove Calvin and another accomplice, Melvin Lee White, to the victim's house. On the drive, Calvin and White discussed White's plan to rob someone. Calvin agreed to try to sell CDs to the victim in an effort to gain entry to the victim's house. Russell then watched White hide by the side of the house while Calvin went inside; when the victim walked out the door with Calvin shortly thereafter, White and the victim began to wrestle, and White shot the victim. In statements to police, Calvin implicated Russell as the shooter, stating that Russell pointed a gun at the victim when the victim tried to get through the door.

On appeal, Calvin argued that insufficient evidence supported his conviction of felony murder based upon the underlying crime

of robbery because no evidence established that an actual robbery took place. He contended that a mere discussion of a robbery was insufficient to establish the felony. The court stated that under the facts of the case, Calvin was correct in arguing that insufficient facts were presented that *a robbery* took place, as no evidence was presented that any one of the perpetrators took any property from the victim. The court stated that felony murder can be supported, however, if the killing was committed during " 'an attempt to commit' " a robbery and that a robbery need not be completed to support the attempt for purposes of K.S.A. 21-3401(b). *Calvin*, 279 Kan. at 200.

In explaining what must be established for an attempt crime, the court stated:

"An overt act cannot be defined by applying a set of definitive rules; rather, each case must be decided based on the unique facts presented and the inference which might reasonably be drawn from those facts. *State v. Salcido-Corral*, 262 Kan. 392, 398, 940 P.2d 11 (1997). 'In order to prove the defendant attempted an underlying felony (and thereby committed felony murder), the State must show that the defendant took a step beyond mere preparation so that some appreciable fragment of the underlying crime was committed.' 262 Kan. at 398." *Calvin*, 279 Kan. at 199-200.

The court considered whether "the noncriminal act by the defendant of selling CDs to the [victim] was a sufficient overt act toward the perpetration of a robbery." *Calvin*, 279 Kan. at 200. With regard to the "taking" element of robbery, the court determined the evidence established the intent of the defendant to get the door open so that one of the codefendants could rob the victim but the defendant's efforts to aid and abet the robbery were prevented when, according to the evidence, Russell pointed a gun at the victim, struggled with him, and the victim was shot. As for the element of threat of bodily harm, the court likewise pointed to the defendant's statement that Russell pointed the gun at the victim while trying to force his way inside the home. And with regard to intent, the court stated that the inference that Russell was intending to rob the victim was reasonable based upon the evidence of White's and the defendant's plan to commit the robbery in this manner with the use of the gun. The court found this evidence

sufficient to establish that the killing happened during the attempt to commit the underlying felony of robbery. *Calvin,* 279 Kan. at 200-01.

Comparable to *Calvin,* the inference that Washington and the others intended to rob Bagsby is reasonable based on the evidence of their plan. Contrary to Washington's argument, Washington was more than a bystander during the planning and the crime; he was a participant. Evidence of Washington's participation in the planning process included Toliver's testimony that the group went to an apartment to get firearms for Washington and Cooks, Washington armed himself, and Washington was the one who knew where Bagsby lived and provided directions. Then, once on site, Washington placed himself near the door as planned so he could join in the home invasion.

Additionally, Toliver's testimony provided evidence that the group performed overt acts in furtherance of the plan: Toliver and the others proceeded to Bagsby's door, Toliver knocked on the door and initiated the ruse of the drug buy, and Edwards entered the house. Likewise, the element of threat of bodily harm was established by Toliver's testimony that Edwards, Washington, and Cooks were armed and that Edwards pointed the gun at Bagsby. It was Edwards' act of entering the house while armed and killing Bagsby that prevented the completion of the robbery. As evidence comparable to this was sufficient in *Calvin* to support Calvin's convictions, the evidence presented at Washington's preliminary hearing was certainly sufficient for the district court to find probable cause that an attempted aggravated robbery had been committed and that Washington, as an aider and abettor, committed the crime.

Washington also argues the evidence was insufficient to bind him over for trial on the felony-murder charge because there was no evidence that he killed Bagsby. This argument has no merit. The State, in proving felony murder,

"must prove only that the defendant committed a felony inherently dangerous to human life, which directly resulted in the homicide. [Citation omitted.] Accordingly, a defendant may be convicted of felony murder even if the victim was not killed by the defendant or an agent of the defendant, as long as the homicide

occurred as a direct result of an inherently dangerous felony. [Citation omitted.]" *State v. Ransom*, 288 Kan. 697, 713-14, 207 P.3d 208 (2009).

The State presented evidence to establish probable cause that Bagsby died as a result of the attempted aggravated robbery in which Washington participated.

In summary, our de novo review confirms the magistrate's ruling that the evidence was sufficient to establish that the crimes of attempted aggravated robbery and felony murder had been committed and there was probable cause to believe that Washington committed these crimes.

Because we reach this holding, we need not address the issue of harmlessness. See *State v. Horton*, 283 Kan. 44, 56, 151 P.3d 9 (2007) (any error at a preliminary hearing is harmless if a jury found the defendant guilty beyond a reasonable doubt, unless the error caused prejudice at trial).

ISSUE 2: Was the *Allen*-type instruction the district court gave to the jury prior to deliberation clearly erroneous?

Washington also challenges the deadlocked jury instruction given in the present case at the close of the trial along with the other instructions. The jury instruction provided by the district court is based on, although not identical to, PIK Crim. 3d 68.12, which is commonly referred to as an *Allen* or *Allen*-type instruction, after *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). As given in this case, the instruction stated:

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the State to decide whether to resubmit the undecided charge(s) to a different jury at a later time. Another trial would be a burden on both side [*sic*].

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of the other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion so that this case may be completed.

"You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

Washington admits that he did not object to the giving of this instruction, making any error reversible only if the instruction was clearly erroneous. An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict. See *State v. Brown*, 291 Kan. 646, 659, 244 P.3d 267 (2011).

Historically this court has allowed an *Allen*-type instruction when given before jury deliberations began, which is when the instruction was given in this case. See *State v. Anthony*, 282 Kan. 201, 216, 145 P.3d 1 (2006); *State v. Makthepharak*, 276 Kan. 563, 569, 78 P.3d 412 (2003). And at the time of Washington's trial there was no authority indicating the instruction should not be given.

Subsequent to Washington's 2008 trial, however, we found that an instruction containing similar language was erroneous. See, *e.g.*, *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2009) (finding it was error to instruct that "[a]nother trial would be a burden to both sides"). Salts, like Washington, had not objected to the instruction. Consequently, we applied the clearly erroneous standard of review. We concluded that the *Salts* jury was not likely to have reached a different verdict because of the instruction. *Salts*, 288 Kan. at 267. We have reached the same conclusion in several subsequent cases. See, *e.g.*, *State v. Duong*, 292 Kan. 824, 838-39, 257 P.3d 309 (2011); *Brown*, 291 Kan. at 659-60; *State v. Colston*, 290 Kan. 952, 977-78, 235 P.3d 1234 (2010); *State v. Ellmaker*, 289 Kan. 1132, 1146-47, 221 P.3d 1105 (2009), *cert denied* 130 S. Ct. 3410 (2010).

In each of those cases, the defendant attacked specific language in the instruction. Washington does not make a similar argument. Instead, he asserts only a general argument that an *Allen*-type jury instruction places an undue burden on the jury to come to an agreement. Washington argues that the distinction made in past cases between situations in which the instruction *is* given before deliberations and those in which it is given after deliberations have

begun "simply does not make sense" because the jury takes copies of the instructions back to the jury room and presumably looks to the instructions when a dispute arises.

This argument echoes our statement in *State v. Nguyen*, 285 Kan. 418, 436, 172 P.3d 1165 (2007), that "[o]ne might debate whether, upon reaching an impasse, a jury is coerced by hearing an *Allen* instruction from the judge, but not coerced by being referred back to the original instructions to read the *Allen* instruction on its own. Nevertheless, this court has made that distinction." Despite this observation and the fact that Nguyen had objected to the instruction, we concluded there was no error. *Nguyen*, 295 Kan. at 436. Here, Washington would have the additional burden of meeting the clearly erroneous standard because, unlike Nguyen, Washington did not object to the instruction. Hence, Washington would have to establish that there was a real possibility the jury would have returned a different verdict. Because Washington cannot meet this ultimate burden, no purpose would be served by a discussion of whether we should alter our holding in *Nguyen* and similar cases, especially in light of the fact that we will consider the instruction to be erroneous under our holding in *Salts*.

In attempting to convince us the giving of the instruction impacted the jury verdict, Washington argues that because the jury in his first trial was hung and a mistrial was declared, the instruction was clearly erroneous in the present case. This court, however, recently rejected a similar argument, finding no sign in the record on appeal that the defendant's second jury was aware that the first jury had hung. *Duong*, 292 Kan at 839. Washington has pointed to no evidence of his second jury's awareness of the first trial. In fact, we find nothing in the record of this case, including proceedings conducted outside the presence of the jury, establishing that the jury in the first trial was unable to reach a verdict. All the record tells us is that the first trial ended in a mistrial, and that fact is discerned from passing references made in pretrial hearings. Our independent review of the record reveals no mention of the first trial in proceedings before the second jury. Further, the evidence against Washington at trial was strong, including the testimony of Toliver and Cooks, Washington's accomplices.

We are not convinced there is a real possibility that the verdict would have been different without the erroneous *Allen*-type instruction. Washington's argument fails.

Affirmed.