NOT DESIGNATED FOR PUBLICATION

No. 116,033

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MARK SHANE TUCKER,
*Appellee.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed August 4, 2017. Reversed and remanded.

*Kendall Kaut,* temporary assistant district attorney*, Jodi Litfin,* deputy district attorney, *Chadwick J. Taylor*, former district attorney, *Michael F. Kagay,* district attorney, and *Derek Schmidt,* attorney general, for appellant.

*Claire M. Hillman,* legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellee.

Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.

LEBEN, J.: The State appeals the district court's dismissal of an aggravated-battery charge against Mark Shane Tucker. Tucker had cut his then-girlfriend, Brandy Martin, when she had tried to stop him from going out with the knife to fight another man.

The district court found that the evidence wasn't sufficient to show that Tucker *intentionally* caused bodily harm to Martin in a way that could have caused great bodily

harm, disfigurement, or death. But the Kansas statute defining aggravated battery doesn't require intentional conduct—it only requires *knowing* conduct, meaning that the person is aware both of his or her conduct and that the conduct is reasonably certain to cause the result at issue. See K.S.A. 2016 Supp. 21-5202(i).

Here, although the evidence may be weak, a jury could find that Tucker knew that he was carrying the knife in such a way that *the risk* of great bodily harm, disfigurement, or death to Martin was reasonably certain to happen. We therefore reverse the district court's judgment and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The aggravated-battery charge against Tucker arose out of events at a Topeka residence in January 2016. Since this was a felony charge, the defendant had the right to a preliminary hearing at which the State would present evidence and the district court would determine whether there was enough evidence to proceed to trial.

The facts we will set out in this opinion are taken from the evidence presented at the preliminary hearing. Although there were several charges against Tucker, we will focus only on the aggravated-battery charge in which Martin was the alleged victim because the only issue on appeal is whether the State had sufficient evidence to move forward on that charge. Additionally, because the district court is required to look at the evidence in the light most favorable to the State when it decides whether the State may proceed to trial, we look at it in that way too. See *State v. Washington*, 293 Kan. 732, 734, 268 P.3d 475 (2012).

Tucker and Martin, who were dating, were both at the residence of a friend when Martin called her former boyfriend, Michael Moe, and asked him to pick her up because Tucker was beating her up. When Moe arrived, Tucker came outside and grabbed a rifle

2

from his truck. Moe testified that Tucker loaded the gun and pointed it at Moe's head. Moe then slapped the gun away and got into a fight with Tucker. At some point, Tucker and Martin went back into the residence.

Moe said he then heard yelling and screaming coming from inside. Martin gave a written statement to police that day saying that she was cut as she tried to stop Tucker from going back out—with a knife—to confront Moe: "I went back to get a laundry basket from the [apartment and] Mark followed me in. As I was leaving he grabbed a knife. I tried to stop him from going out with the knife and I got cut." Moe said he asked Martin what had happened when she came out of the house with a t-shirt or towel wrapped around her bleeding hand. He reported that "she said that Mark had cut her with a knife."

Martin's cut was on the back of her hand. Moe took her to a hospital emergency room, where it took five stitches to close the wound. She still has a scar.

We should note that although Martin testified at the preliminary hearing, she said she didn't want to be there and equivocated on several points as compared to her written statement. She initially said she couldn't recall whether a weapon was involved and that she was unsure how she cut her hand. When asked whether she was cut with the knife, she responded, "Yeah. I mean, I very well could have grabbed it to stop it." She added that she might have "grabbed the knife to stop him from doing anything with the item." But when asked whether Tucker was trying to cut her, she said, "I don't believe so, no."

The district court found the evidence insufficient to proceed on the aggravated-battery charge against victim Martin. The court focused on a lack of evidence that Tucker had intended to cut Martin:

3

"So my concern here, counsel, is I don't have any evidence . . . even though I would be bound to find reasonable inferences on behalf of the State, [I] do not find that there was any intentional act or evidence that it was intentional. She did get cut. She stepped in and apparently tried to stop [him]. Obviously, there are some issues with that but that's what the testimony is."

The State appealed the district court's dismissal of the charge to our court.

ANALYSIS

The State charged Tucker with aggravated battery, an offense that can have a longer or shorter sentence depending on the severity of the conduct involved and whether that conduct was knowing or reckless, as those terms are defined in the Kansas Criminal Code. See K.S.A. 2016 Supp. 21-5413(b). The specific charge here was that Tucker knowingly caused bodily harm to Martin in a way that could have caused great bodily harm, disfigurement, or death. See K.S.A. 2016 Supp. 21-5413(b)(1)(B).

The district court dismissed the charge because the evidence didn't show that Tucker *intended* to cut Martin. But the State correctly notes that the district court applied the wrong standard. An earlier version of the Kansas aggravated-battery statute required intentional conduct. See K.S.A. 21-3414(a)(1)(B). But the current statute simply requires that the defendant "knowingly cause" the harm at issue. See K.S.A. 2016 Supp. 21-5413(b)(1)(B).

So what does "knowingly" mean? Our legislature has defined the term. Under Kansas law, a person acts "knowingly" if he or she "is aware of the nature of [his or her] conduct" and "is aware that [the] conduct is reasonably certain to cause the result." See K.S.A. 2016 Supp. 21-5202(i); *State v. Hobbs*, 301 Kan. 203, 210-11, 340 P.3d 1179 (2015). In sum, if a person acts while aware that his or her conduct is reasonably certain to cause the result, the person acts knowingly. 301 Kan. at 210-11.

4

That definition has two parts—awareness both of the nature of the conduct *and* that the conduct is reasonably certain to cause a particular result. For the aggravated battery charged here, that result would be causing bodily harm to Martin in a way that could have caused great bodily harm, disfigurement, or death. See K.S.A. 2016 Supp. 21-5413(b)(1)(B). So the State had to show Tucker's awareness that by fighting with Martin over the knife, he was reasonably certain to cause some bodily harm while acting in a manner in which great bodily harm, disfigurement, or death could be inflicted.

We must determine whether the State presented sufficient evidence simply to proceed to trial on the charge. To do so, the State doesn't have to present especially strong evidence: The State's burden is to establish that a crime was committed and that there's probable cause to believe that the defendant committed it. K.S.A. 2016 Supp. 22-2902(3). By "probable cause," we mean sufficient evidence that would cause a reasonably prudent person to conscientiously entertain a belief of the defendant's guilt. *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012).

In reviewing the evidence, the court must look at the evidence in the light most favorable to the State. 293 Kan. at 734. The court's only role is making sure there's enough evidence to go to trial, operating as a check to be sure that prosecutors aren't abusing their discretion by bringing charges wholly unsupported by evidence.

Under these standards, the State presented enough evidence to proceed. On the day it happened, Martin said that Tucker cut her when she tried to stop him from going back out with a knife to confront Moe. One can reasonably infer that Tucker knew he was holding a knife. We don't know that he intentionally cut Martin—the district court was right about that. But even if we simply view the evidence as Tucker trying to keep the knife away from Martin while the parties struggled with one another (Tucker trying to go outside to confront Moe, Martin trying to keep him from taking the knife), Tucker would

5

know that struggling with someone over a knife is reasonably certain to cause harm and to create the risk of great bodily injury, disfigurement, or even death. Under Kansas law, even a scar hidden by one's hair is enough disfigurement to present an aggravated-battery charge to a jury. See *State v. Chandler*, 252 Kan. 797, 802-05, 850 P.2d 803 (1993). And here, Martin has a scar on her hand.

The evidence on this charge may be weak. But even when evidence is weak, the district court must let the State present the case to a jury as long as the evidence tends to show that the offense was committed and the defendant committed it. *Washington*, 293 Kan. at 734. The prosecutor, not the court, is vested with the discretion of whether to prosecute a case if the probable-cause standard has been met.

The district court's judgment, which dismissed the aggravated-battery charge involving Martin as the victim, is reversed. The case is remanded to the district court for further proceedings.