NOT DESIGNATED FOR PUBLICATION

No. 116,945

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ROBERT DALE RHOADES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed December 22, 2017. Reversed and remanded.

*Rachel L. Pickering*, assistant district attorney, *Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Matthew R. Williams*, of Topeka, for appellee.

Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.

PIERRON, J.: The State appeals the district court's finding that probable cause did not exist to bind over Robert Dale Rhoades for trial on the charges of aggravated battery, intentional, great bodily harm; or in the alternative aggravated battery, physical contact.

Robert was charged with battery-physical contact, or in the alternative, battery-bodily harm on February 10, 2016. The alleged incident was said to have occurred on December 6, 2014. An amended complaint was filed on August 31, 2016, which charged

1

Robert with aggravated battery, intentional, great bodily harm; or in the alternative aggravated battery, physical contact.

The preliminary hearing was held on November 17, 2016. Sandra Holly testified that on December 6, 2014, she and her husband, Danny Holly, went to Robert and Peggy Rhodes' house to watch a football game. Sandra stated the four were drinking beer and Fireball. She had seven to eight shots that night and three beers while at Robert's house. Around 9:30 p.m. they turned off the game and started listening to loud music. Everyone started dancing. Sandra testified she went to the bathroom, and when she came out she saw Peggy dancing with Danny. Robert approached her and said, "Don't let that bother you." Sandra walked towards a sitting area when Robert jumped in front of her and said "you're mad, you're mad." Sandra insisted she was not mad, but Robert continued to tell her she was mad.

Sandra stated that Robert stepped in front of her, backed her up, and grabbed her shirt. Robert was aggressive and told her she was not going over there "and start shit with [her husband]." Sandra turned to get around Robert, and he grabbed her by the neck and backed her up to a hot tub very quickly. Sandra hit the corner of the hot tub, and Robert hyperextended her over the hot tub. He was very aggressive and Sandra was scared. Sandra told Robert to let go of her neck, and he pushed her around the corner of the hot tub. She tried to move, and Robert threw her to the floor and she landed on all fours. He came up behind her and put his hands on her neck and pushed her down. Sandra thought he was going to put one of his wrestling moves on her. Sandra screamed at Peggy and Peggy ran to Robert. Robert got off of Sandra and stood up.

The testimony varied. Sandra testified that Robert ran at her "like a bullet" with his hands up. He grabbed her shoulder and pushed over to the hot tub. He grabbed her neck with both of his hands and started squeezing. Peggy was screaming at Robert. Sandra stated her eyes started rolling back in her head and she felt like she was going to pass out.

2

Robert jumped off the hot tub and because he had ahold of her neck, Sandra followed him "like a dog on a leash." Sandra hit Robert in the eye, and Robert kicked her feet out from under her and slammed her to the floor on her back. He then hit her eye about five times, hit her jaw five times, hit her temple, and hit in the upper eye five times. He hit her in the mouth several times. Sandra stated she was "in and out of it." When she came to he hit her forehead and hit her head on the floor.

Sandra was able to leave the house at some point and went to a neighbor for help. She went to the hospital after the incident and received treatment. She stated that since the incident she has had memory loss and a scar on her face and agreed that her face "isn't as symmetrical" anymore.

Sandra testified on cross-examination that she is about 6 feet tall and Robert is about 5 feet 3 inches tall. Before the incident, she had a few beers before they went to dinner around 3:30 p.m. At the restaurant she had three rum and cokes. After the restaurant, they went to Robert's house and had the beer and shots. She further testified she has gotten angry when she has been drunk before. After the incident the police had to detain her.

Officer Kelsey Krogmann responded to the incident at Robert's home. He contacted Sandra and Danny outside the home and they appeared to be intoxicated. Officer Krogmann stated Sandra was not very cooperative at the scene. He had to restrain her and place her in his patrol vehicle. She then started kicking at the windows in the patrol vehicle.

Officer Krogmann met with Robert who had a cut lip. Robert told Krogmann that his face had been bloody but he had cleaned it up. Robert stated that Sandra had attacked him and struck him approximately two times. Robert then told Krogmann he had struck Sandra approximately six to eight times. Krogmann determined the initial aggressor was

3

Sandra through verbal altercation. Krogmann testified that Robert and Peggy were fairly calm that evening, while Sandra appeared angry. He indicated Sandra had a swollen eye and a lot of blood on her as well as some marks on her neck.

Peggy testified that at some point in the evening they turned the football game off and turned on music instead. She started dancing with Danny. She stated that in her house, when you exit the bathroom you can see the front doors and the hot tub, but you cannot see the kitchen. The bathroom is on the other side of the house from the kitchen. When you exit the bathroom you have to walk through the entire house to get to the kitchen. Peggy stated Danny, Robert, and she were sitting at the table and Sandra was not present. Robert got up and walked towards the kitchen. She heard a scuffle and saw Robert and Sandra struggling back and forth. Robert had blood dripping off of his chin and he was yelling "she hit me, she hit me," and they went down on the floor. Peggy stated she got in-between them trying to break them up and there were fists flying. She indicated this was nowhere near the hot tub. She testified she never saw Robert throw a punch or choke Sandra. Danny was in the room the entire time.

After the incident, Peggy cleaned up Robert's face. His tooth had put a hole in his lip. She stated that throughout the incident she did not see Robert acting aggressively.

Peggy testified that when Sandra and Danny showed up at her house before dinner, Sandra seemed as though she had already been drinking and she was "pretty tipsy." Since she was driving that evening, she was trying not to drink and had a pretty clear memory of what happened.

Robert testified Sandra hit him twice and he hit her back after she had attacked him. He had been sitting at the table with Peggy and Danny when he went into the kitchen. He stated he had never strangled Sandra, slammed her against the wall, or

4

punched her. The incident had occurred on the opposite side of the house from the hot tub, and he never bent her over backwards on the hot tub.

At the end of hearing evidence, the district court stated it found it very difficult to believe any of the witnesses who were present because they were intoxicated and the event had occurred two years prior. It found Sandra's testimony was inconsistent with the layout of the Rhoades household. The court indicated that while it must view the evidence in the light most favorable to the State, that did not mean it could ignore contradictory testimony. The court stated there were various levels of intoxication and to a point, Robert was defending himself, and it could not tell that he was ever the aggressor. Ultimately, based on the information and testimony the court had heard, it found there was no probable cause to believe that either of the felonies charged as alternatives were committed in this case.

The State appeals. It argues the district court erred when it found there was no probable cause to bind over Robert on the charges of aggravated battery, intentional, great bodily harm; or in the alternative aggravated battery, physical contact. We reluctantly agree with the State.

Appellate courts exercise de novo review over a district court's probable cause determination at a preliminary hearing. *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011).

In reviewing the evidence, the district court draws inferences in favor of the State. Moreover, the evidence need only show probable cause, not guilt beyond a reasonable doubt. Even if the evidence is weak, the defendant should be bound over for trial if the evidence tends to establish that the offense was committed and that the defendant committed it. *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012).

5

At a preliminary hearing, the district court examines the evidence to determine "(1) whether a crime has been committed and (2) whether there is probable cause to believe that the accused committed the crime." 293 Kan. at 733. The evidence does not need to prove guilt beyond a reasonable doubt, just probable cause. 293 Kan. at 733. Probable cause is "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 (2000) (citing *State v. Puckett*, 240 Kan. 293, Syl. ¶ 1, 729 P.2d 458 [1986]). The judge at a preliminary hearing must draw inferences favorable to the State from the evidence presented and should not be concerned with sufficiency of the evidence to support a conviction. *Washington*, 293 Kan. at 734. Even if the evidence is weak, the defendant should be bound over for trial if there is probable cause that the offense charged was committed and that the defendant committed it. 293 Kan. at 734.

In order to bind over Robert for aggravated battery, intentional great bodily harm, under K.S.A. 2016 Supp. 21-5413(b)(1)(A), the State had to prove that Robert knowingly caused great bodily harm or disfigurement to Sandra. In the alternative, in order to bind Robert over for the charge of aggravated battery, physical contact, under K.S.A. 2016 Supp. 21-5413(b)(1)(C), the State had to prove that Robert knowingly caused physical contact to Sandra in a manner whereby great bodily harm, disfigurement, or death could be inflicted.

At the preliminary hearing, Sandra, Robert, and Peggy presented contradictory testimony. Everyone present for the incident was intoxicated. Sandra had a few beers before going to dinner around 3:30 p.m., three rum and cokes at the restaurant, and seven to eight shots and three beers while at Robert's house. Sandra's testimony on how the events occurred was inconsistent with the layout of Robert and Peggy's home.

Officer Krogmann testified he believed Sandra was the initial aggressor in the altercation between her and Robert. He stated Sandra was very angry and uncooperative

6

while Robert and Peggy were fairly calm. He did note that Sandra had a swollen eye and a lot of blood on her as well as some marks on her neck. Robert had a cut on his lip.

There was testimony presented that would support the positions of both sides. The district court's comments on the intoxication of almost everyone and the lapse of time since the incident were well taken. A jury might well find there was insufficient evidence to convict Rhoades. However, even if the evidence is contradictory, there was evidence supporting the State's contention that there was probable cause to bind over Rhoades on the charges. We note that the judge at a preliminary hearing must draw inferences favorable to the State from the evidence presented. A serious physical altercation occurred, and if the State's contentions are accepted, there was evidence to support a finding of probable cause. There were significant injuries cause by the physical altercation.

We find there was probable cause that the crimes charged were committed by Rhoades. We reverse the district court's finding that there was no probable cause. We remand for further proceedings consistent with this decision.

Reversed and remanded.