NOT DESIGNATED FOR PUBLICATION

No. 119,845

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TABITHA KURTENBACH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed February 8, 2019. Affirmed.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Christopher M. Joseph* and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellee.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

PER CURIAM: The State appeals the district court's finding that probable cause did not exist to bind over Tabitha Kurtenbach for trial on the charge of attempted interference with law enforcement and that her conduct was protected by the First Amendment to the United States Constitution.

1

On November 22, 2017, Clay Center Police Officer Scott Galindo applied for a search warrant for the Clay Center residence of Connie Spurrier. Sometime between 1:05 and 1:10 p.m. that same day, Galindo and three other officers exited the law enforcement building to execute the warrant. As they exited, they passed by Kurtenbach, who was entering the building. Kurtenbach was a bail bond agent.

The officers went to Spurrier's residence to execute the warrant. While doing so, the officers observed Spurrier's cell phone receive two text message notifications from Kurtenbach. The first message, sent at 1:03 p.m., said: "We should be able to work something out on the bond. Please go through me and not [L]ori[.]" The second message, sent at 1:05 p.m., said: "4 police officers just left here with papers together[.]" It did not appear that Spurrier had seen the texts prior to the officers' arrival. The officers seized Spurrier's phone and continued with their search.

Suspecting that Kurtenbach had somehow discovered the location of the search warrant and texted Spurrier to warn her, Officer Galindo later spoke with Kurtenbach about the text messages. Kurtenbach said that the first message related to a bond for Jason Thatcher that she had been discussing with Spurrier. Kurtenbach stated that the second message was "Clay Center gossip" that she had sent to Spurrier and three other people. Kurtenbach admitted, however, that she did not send the message to Spurrier as part of a group message. Galindo asked to see Kurtenbach's cell phone, but Kurtenbach declined this request after stating that she wanted to call her attorney.

The State subsequently charged Kurtenbach with a single count of attempted interference with law enforcement. The case proceeded to a preliminary hearing, where the State presented testimony from Officer Galindo and Tera McCann-Barber, a Clay County dispatcher.

Officer Galindo testified as to the events set forth above. He stated that the only people who knew that a search warrant had been issued for Spurrier's address were the four officers who were executing the warrant, the judge who had signed the warrant, and the dispatcher, who had been advised of the address just before the officers left the building. After determining that none of these individuals had told anyone else about the location of the search warrant and that the address had not been made public, Galindo continued to investigate how Kurtenbach could have obtained this information. As part of his investigation, Galindo listened to a recorded jail phone conversation between Kurtenbach and inmate Greg Bowser that had occurred before the officers left the building to execute the warrant. During the conversation, Bowser told Kurtenbach that the police would be executing a search warrant at someone's house. According to Galindo, Kurtenbach asked Bowser multiple times if he knew who the warrant would be issued for, but Bowser stated that he did not know. Galindo believed that Bowser could have heard the officers talking to the judge about the search warrant when Bowser had been nearby for a hearing. Galindo admitted he could not find any evidence that Kurtenbach knew the location of the search warrant or that she sent the text message to Spurrier with the intent to warn her about the warrant. Still, Galindo expressed concern that Kurtenbach just happened to send a message about the officers leaving the law enforcement building to the target of the search warrant.

McCann-Barber testified that she was on dispatch duty on November 22, 2017. McCann-Barber stated that right before Officer Galindo and the other officers left to execute the search warrant, they told her the address that they were going to search. McCann-Barber said that she did not disclose the location to anyone before the officers' arrival at the address. McCann-Barber testified that Kurtenbach came inside the building around the same time the officers were exiting. According to McCann-Barber, Kurtenbach asked where the officers were going. McCann-Barber stated that she told Kurtenbach that she could not give out that information.

Following this testimony, the State asked the magistrate judge to bind Kurtenbach over on the charge of attempted interference with law enforcement. The State claimed that Kurtenbach had disclosed a nonpublic fact in order to subvert law enforcement, pointing to evidence that Kurtenbach sent the text message about the officers' actions to Spurrier, the target of the search warrant, as well as evidence that the address of the warrant was never released publicly. In response, defense counsel argued that because Kurtenbach was simply reporting public information that the officers were leaving the building, the conduct underlying the charge against her was protected by the First Amendment.

Noting that it was "a close case," the judge bound Kurtenbach over for trial. The judge questioned whether it was "just a mere coincidence" that Kurtenbach sent the text message to the target of the search warrant but ultimately found there was probable cause to support the State's theory that Kurtenbach was trying to warn Spurrier that law enforcement was en route to her residence.

Thereafter, Kurtenbach moved to dismiss the complaint on grounds that her report of police conduct plainly visible to the public was protected by the First Amendment. Conversely, the State argued that probable cause existed to support the charge against Kurtenbach based on its contention that she used nonpublic information to warn Spurrier about the search warrant.

The district court held a hearing on Kurtenbach's motion to dismiss where the parties argued their respective positions. After considering Kurtenbach's motion, the State's response to the motion, and the parties' arguments, the district court granted Kurtenbach's motion and dismissed the complaint. Specifically, the court found there was no probable cause to support the attempted interference with law enforcement charge, citing a lack of evidence that Kurtenbach had obtained any nonpublic information that the police were executing a warrant at Spurrier's residence or that Kurtenbach knew Spurrier

4

was the target of the warrant. The court therefore held that Kurtenbach's report of the officers' public actions was protected by the First Amendment.

ANALYSIS

On appeal, the State argues that the district court erred in granting Kurtenbach's motion to dismiss, claiming that the court used an incorrect standard in evaluating the evidence presented at the preliminary hearing. The State contends that when the evidence is evaluated under the proper standard, there is probable cause to support a finding that Kurtenbach committed the crime of attempted interference with law enforcement.

Our Supreme Court has set forth the standards of review in cases such as the one before us:

"Under K.S.A. 22-2902(3), the magistrate at a preliminary hearing examines the evidence to determine (1) whether a crime has been committed and (2) whether there is probable cause to believe that the accused committed the crime. The evidence need not prove guilt beyond a reasonable doubt, only probable cause. 'Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.' In determining if this standard is satisfied, the judge at the preliminary hearing must draw inferences favorable to the prosecution from the evidence presented and should not be concerned with sufficiency of the evidence to support a conviction. Even where the evidence is weak, the defendant should be bound over for trial if the evidence tends to disclose that the offense charged was committed and that the defendant committed it. [Citations omitted.]" *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012).

The sufficiency of a preliminary examination may be challenged only by a motion to dismiss filed in the district court. *State v. Butler*, 257 Kan. 1043, 1059, 897 P.2d 1007 (1995). Kurtenbach appropriately filed a motion to dismiss with the district court. On

5

appeal from the district court's denial of that motion, an appellate court reviews the district court's probable cause finding at a preliminary hearing de novo. *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011). The sole question we face is the same as the judge or magistrate at the conclusion of the preliminary hearing: "'whether the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously ascertain a reasonable belief of the accused's guilt.'" *State v. Phelps*, 266 Kan. 185, 193, 967 P.2d 304 (1998).

The State charged Kurtenbach with attempted interference with law enforcement, contrary to K.S.A. 2017 Supp. 21-5904(a)(3). This statute prohibits "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." K.S.A. 2017 Supp. 21-5904(a)(3). The State alleged in the complaint that Kurtenbach had attempted to obstruct the officers "by texting the subject of a search warrant that the officers had just left the law enforcement center with papers [and] thereby committed an overt act in the attempt; the execution of the warrant resulted in felony charges against the person warned."

The State concedes that on its own, Kurtenbach's act of sending a text message stating that she saw officers leaving the law enforcement center with papers in hand did not violate K.S.A. 2017 Supp. 21-5904(a)(3). Indeed, the First Amendment to the United States Constitution and § 11 of the Kansas Constitution Bill of Rights forbid the imposition of criminal sanctions for truthful reporting of facts gleaned from public records. See *State v. Stauffer Communications, Inc.*, 225 Kan. 540, 544-45, 548, 592 P.2d 891 (1979) (State may not impose criminal sanctions against news media for publishing truthful information about unexecuted arrest warrants obtained from public records). The State argues, however, that Kurtenbach's actions did not end there. According to the State, Kurtenbach obtained nonpublic information—the address of the search warrant— and then texted Spurrier to warn her. These actions, the State alleges, are not

6

constitutionally protected and provide sufficient probable cause to support a charge of attempted interference with law enforcement.

As our Supreme Court has explained, evidence is sufficient to bind a defendant over for trial if it "tends to disclose" that the crime has been committed. *Washington*, 293 Kan. at 734. The State argues that the following evidence presented at the preliminary hearing tends to disclose that Kurtenbach attempted to interfere with the officers' execution of the search warrant:

- Kurtenbach's conversation with Bowser indicated that she knew the police were executing a search warrant and was actively seeking to discover the location of the warrant.
- Officer Galindo testified that the location of the warrant was not public and that the officers were careful to protect the information.
- Kurtenbach sent the text message about the officers' actions only to Spurrier, the target of the search.

The State claims that the district court ignored this evidence and failed to make the appropriate inferences in favor of the State. To that end, the State asserts that from this evidence one could infer that Kurtenbach—sometime during the 40 minutes after she talked to Bowser and before she saw the officers exiting the law enforcement building— obtained the address of the search warrant from a nonpublic source and that she sent the text message to Spurrier in order to warn her about the warrant. The State argues that even if this evidence was insufficient to convict Kurtenbach beyond a reasonable doubt, it was sufficient to support a finding of the probable cause required to bind Kurtenbach over for trial.

The State correctly notes that in ruling on Kurtenbach's motion to dismiss, the district court was obligated to draw inferences favorable to the prosecution from the

7

evidence presented. See *Washington*, 293 Kan. at 734. Black's Law Dictionary 897 (10th ed. 2014) defines the term "inference" as "[a] conclusion reached by considering other facts and deducing a logical consequence from them." But the State has pointed to no underlying objective facts presented at the preliminary hearing from which a person of ordinary prudence and caution could logically deduce that Kurtenbach did, in fact, discover the address of the residence to be searched. See *Washington*, 293 Kan. at 734. To the contrary, the evidence suggested that Kurtenbach did not know the target of the search warrant. Officer Galindo testified that Bowser did not tell Kurtenbach the warrant's location. And McCann-Barber testified that when Kurtenbach entered the law enforcement building as the officers exited, Kurtenbach asked where the officers were headed and thus did not appear to know where they were going. The State presented no evidence of Kurtenbach's whereabouts during the 40 minutes after she talked to Bowser and before she saw the officers exit the law enforcement building or of any actions that Kurtenbach took to find out more information about the search warrant. In fact, Galindo stated that he did not know what Kurtenbach did during this time and agreed there was no evidence indicating that she knew where the officers were going. Galindo testified that he believed Kurtenbach did additional research to discover the search warrant's location simply because she sent a text message to Spurrier, the target of the warrant.

But the fact that Kurtenbach sent a text message to the target of the search warrant does not provide sufficient evidence to support an inference that Kurtenbach obtained the address from a nonpublic source and sent that information in an attempt to interfere with law enforcement. Kurtenbach's text message to Spurrier did not state that the officers were leaving to execute a search warrant, state that the officers were on their way to Spurrier's residence, or otherwise offer any indication that Kurtenbach knew that Spurrier was the target of the warrant or that Kurtenbach was attempting to warn Spurrier about the warrant. The message simply stated that Kurtenbach saw four police officers leaving the building with papers. Kurtenbach's act of sending a message containing this public information to Spurrier does not, without more, provide probable cause that Kurtenbach

8

disclosed nonpublic information in an attempt to knowingly obstruct or interfere with law enforcement's execution of the search warrant at Spurrier's residence. Kurtenbach's conduct was therefore protected by the First Amendment. See *Stauffer Communications, Inc.*, 225 Kan. at 544-45. As a result, the district court did not err in granting Kurtenbach's motion to dismiss.

Affirmed.