NOT DESIGNATED FOR PUBLICATION

Nos. 125,446
125,447

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHYLAND L. TINDALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Oral argument held October 17, 2023. Opinion filed January 26, 2024. Affirmed.

*Christopher S. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, P.J., ATCHESON, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: The Sedgwick County District Court revoked Shyland Tindall's probation after an evidentiary hearing, finding that he had violated the terms of his probation by committing three new offenses. He now appeals those findings, asserting they are not consistent with all the evidence presented at the hearing. He also claims he was acting in self-defense and should have been immune from further legal repercussions, including any proceedings to determine whether he had violated his

1

probation. We do not find these arguments persuasive. Thus, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

Tindall was convicted of several crimes in two cases in 2020. In one case, Tindall pleaded guilty to aggravated assault, criminal possession of a weapon, possession of methamphetamine, and criminal threat. In the other, he pleaded guilty to violating a protective order and two counts of criminal threat. At a combined sentencing hearing in January 2021, the district court imposed controlling 38-month and 17-month prison sentences, to be served consecutively. At Tindall's request, the court suspended these sentences and imposed concurrent 24-month probation terms.

About three months later, the State alleged that Tindall had violated his probation in both cases by interfering with law enforcement and violating no-contact orders. Tindall admitted to these violations. The district court ordered him to serve a 3-day jail sanction and extended his probation for 24 months.

A few months later in October 2021, the State again alleged that Tindall had violated the terms of his release and sought to revoke his probation. This time, the State indicated that Tindall had committed new offenses—aggravated assault, battery against a law enforcement officer, and resisting or obstructing arrest. Tindall's actions also led the State to file a third criminal case against him.

Tindall filed motions in all three cases, arguing that he was entitled to immunity from further legal consequences. He asserted that his actions precipitating the third case—the same actions that formed the basis for the State's motion to revoke his probation in his earlier two cases—were justified to protect himself and his property. Thus, he asserted, he was immune from prosecution in the third case. For the same

2

reason, he argued that the State's motions to revoke his probation in his two earlier cases should be dismissed.

*The Combined Evidentiary Hearing*

The district court held a combined evidentiary hearing in Tindall's three cases in January 2022. At the outset of the hearing, the court indicated that the hearing would serve as: (1) the preliminary hearing in Tindall's third case, to determine whether there was probable cause to show he had committed the crimes charged there; (2) the hearing on the alleged probation violations, to assess whether the State proved by a preponderance of the evidence that Tindall had violated his probation; and (3) a hearing to assess whether Tindall was entitled to any immunity for his actions.

At the hearing, two versions of events giving rise to Tindall's new aggravated-assault charges were presented. Terry Tolbert, the alleged victim, provided one explanation, while Tindall provided a divergent account of what happened.

Highly summarized, the State presented evidence that Tolbert's wife had been romantically involved with both him and Tindall in October 2021. On the evening that gave rise to Tindall's trouble, she sent Tolbert a text message asking him to pick her up from Tindall's residence in Wichita. When Tolbert arrived at the residence sometime later, he met Tindall outside, and a verbal argument ensued.

Tolbert and Tindall disagreed as to what was said during that argument and who initiated the verbal disagreement. Tolbert could not recall precisely what was said, but he remembered offering to fight Tindall; Tindall stated that Tolbert, who was a trained martial-arts fighter, removed his shirt and moved forward as if to physically attack. But they generally agreed that no physical altercation took place. They also agreed that at some point, Tolbert's wife came outside, and Tindall went back inside his residence.

3

Tolbert and his wife then went to Tindall's backyard to remove some of Tolbert's personal property.

Tolbert testified that about 10 minutes later, he and his wife were still in the backyard. Tolbert's wife told him to watch out because Tindall had returned and was carrying a knife. Tolbert turned around and saw Tindall approaching with the knife; Tolbert had no weapons. Tolbert said Tindall continued approaching him and began swinging the knife when they were within arm's reach. Tolbert estimated that Tindall swung the knife approximately six times, and Tolbert said he assumed a defensive stance so he could evade any potential contact with the knife.

After Tindall swung the knife at him, Tolbert said he maneuvered his way from the backyard to the street in front of Tindall's residence, and Tindall followed him. As this happened, Tolbert's wife went inside Tindall's residence and called the police. When the police arrived, Tolbert said Tindall returned to the porch and tried to hide the knife. Shortly thereafter, the police and Tindall got into an altercation when they placed Tindall under arrest.

Tindall's testimony painted a different picture of these events. Tindall explained that he knew Tolbert had previously trained in martial arts and stated that Tolbert's presence on his property frightened him. Tindall testified that when they were in the front yard, he told Tolbert he did not want to fight and asked Tolbert to leave several times. Despite these requests, Tindall said Tolbert entered his backyard. While Tolbert went to the backyard, Tindall grabbed a knife on his porch and followed him. Tindall said he grabbed the knife because he was frightened, but he testified that he never swung the knife at Tolbert.

Two of the police officers who responded to the call made by Tolbert's wife also testified at the hearing. The officers stated that they spoke with Tolbert when they arrived, and he explained what had happened.

The officers then attempted to arrest Tindall for aggravated assault. The officers grabbed Tindall's arms, and Tindall tensed up, telling the officers to "get the fuck off" him. He then thrashed his arms back, hitting one of the officers and knocking her backward. (Tindall denied ever attempting to hit any of the police officers; he said he only made the sudden move with his arm because he was confused as to why he was being arrested on his own property.) The other officer was able to maintain a grip on Tindall, and a third assisted, forcing Tindall to the ground. The officers struggled with Tindall for about 10 seconds as Tindall continued to resist, attempting to prevent them from handcuffing him.

Once he was handcuffed, the officers continued to have difficulty with the arrest. For example, Tindall stiffened his legs, making it difficult for an officer to walk him to a police car. And then when they reached the car, Tindall refused to put his legs inside the car for several minutes, preventing the officers from closing the car door so they could transport him to the police station. The officers tried to put Tindall in a restraint system so he could be safely transported, but Tindall again refused to cooperate. After several more minutes of Tindall refusing to enter the car, the officers were able to convince Tindall to enter a police van, but even that step was not accomplished smoothly; when the van was a few blocks from Tindall's home, Tindall again became belligerent, prompting the officers to call for medical assistance so they could transport him to the station.

*The District Court's Ruling*

After the close of the evidence at the hearing, the parties argued three issues: probable cause to hold Tindall on the new felony charges; the evidence supporting the

probation violations; and Tindall's request for self-defense immunity both as to the new criminal charges and the probation violations based on the same circumstances.

On the immunity issue, the State noted that a person is not entitled to immunity for using force to resist a law enforcement officer acting in their official capacity. See K.S.A. 2022 Supp. 21-5231(a). The State pointed out that this meant that immunity was not available for two of Tindall's alleged offenses—battery of a law enforcement officer and obstructing or resisting arrest—because both involved using force against officers. The parties disagreed whether the evidence showed that Tindall had been defending himself when he approached Tolbert with the knife, with the State emphasizing Tolbert's testimony and Tindall relying on his own account of the events.

The district court took the matter under advisement and issued its ruling at a later hearing. It found that the State had established probable cause in the new case that Tindall had committed crimes of aggravated assault on Tolbert, battery of a law enforcement officer, and resisting or obstructing arrest. The court then found that the State had proven by a preponderance of the evidence that Tindall committed these three offenses and thus violated the terms of his probation in his two earlier cases.

The court took up Tindall's request for immunity last, focusing on the evidence surrounding the aggravated assault. The court explained that its ruling boiled down to comparing Tolbert's and Tindall's testimony. It explained that it found Tolbert's description more believable, noting that Tindall's testimony and demeanor were less credible. And the court emphasized that regardless of whose account of the initial encounter in front of the Tindall's residence the court believed, the evidence showed that the parties disengaged when Tindall went inside and Tolbert and his wife went into the backyard. The court found that Tindall's later act of aggression—coming toward Tolbert with a knife—did not constitute self-defense or defense of his property.

6

Following this explanation, the district court denied Tindall's request for immunity in all three cases. The court explained that this ruling did not prevent Tindall from claiming self-defense at his trial in the third case, but he was "not immune from prosecution and not entitled to a dismissal based upon the evidence."

At a later disposition hearing, the district court revoked Tindall's probation in his two earlier cases. The court explained that Tindall had engaged in several instances of aggression or violence, beginning with the events giving rise to his convictions in each case, continuing with his first round of probation violations that resulted in the jail sanction, and yet again in the clashes with Tolbert and the law enforcement officers in October 2021. The court noted that all of the State's motions to revoke Tindall's probation had been triggered, at least in part, by Tindall's skirmishes with law enforcement— conduct the court described as "pretty abhorrent behavior." The court thus revoked Tindall's probation and ordered him to serve his original sentences. Tindall now appeals those revocations. Those two cases have been consolidated here for our consideration.

We presume the prosecution in Tindall's third case continued upon conclusion of the preliminary hearing. We do not have that record before us, and the parties' arguments in that case are not part of this appeal.

DISCUSSION

Tindall's appeal raises several questions for us to consider, but they can generally be grouped into two broad categories. He argues that the evidence submitted at the hearing did not support the district court's factual findings that he had violated the terms of his probation by committing three new offenses. He also claims the district court should have dismissed outright the State's motion to revoke his probation because his actions were entitled to immunity under K.S.A. 2022 Supp. 21-5231. For the reasons we discuss, we find neither argument persuasive.

7

Before we address Tindall's assertions in detail, we take a few moments to reflect on the unusual manner in which these issues have taken shape. As we have indicated, Tindall's evidentiary hearing combined the issues raised in three cases, but these issues arose at different procedural stages and called on the district court to apply varying standards of proof.

*First*, the evidentiary hearing served as the preliminary hearing in the new criminal case filed after the events in October 2021. In that case (which is not before us in this appeal), the district court considered whether the State's evidence established probable cause that Tindall committed the crimes of aggravated assault, battery of a law enforcement officer, and resisting or obstructing arrest. See K.S.A. 2022 Supp. 22-2902(c); *State v. Washington*, 293 Kan. 732, 733, 268 P.3d 475 (2012). The district court was required to determine whether the evidence was sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of Tindall's guilt. *State v. Phillips*, 312 Kan. 643, 664, 479 P.3d 176 (2021). Probable cause is a less demanding standard of proof than preponderance of the evidence. See *State v. Lloyd*, 52 Kan. App. 2d 780, Syl. ¶ 4, 375 P.3d 1013 (2016). The district court found that the evidence was sufficient to allow three charges in the new case against Tindall to proceed.

*Second*, the evidentiary hearing served as the State's opportunity to prove that Tindall had violated his probation in his two previous cases by committing new crimes— a purpose entirely different from a probable-cause determination to proceed with a criminal prosecution. The State was not required to wait until Tindall was convicted of these new offenses to rely on that criminal conduct to show that he violated his probation. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315-16, 164 P.3d 844 (2007), *rev. denied* 286 Kan. 1183 (2008). But it was required to prove by a preponderance of the evidence—i.e., that it is more likely than not—that Tindall committed those crimes. See *Lloyd*, 52 Kan. App. 2d at 782. The district court considered all the evidence presented and found that

the State had met its burden to show Tindall had committed the crimes of aggravated assault, battery of a law enforcement officer, and resisting or obstructing arrest.

*Third*, the evidentiary hearing required the district court to assess Tindall's requests for immunity as a bar both to the new criminal prosecution and to the probation revocations. When evaluating a claim of immunity for some use of force under K.S.A. 2022 Supp. 21-5231 (which we refer to here in shorthand as self-defense immunity), the district court must consider the totality of the circumstances, weigh the evidence without deferring to the State, and determine whether the State has established probable cause that the defendant's use of force was not statutorily justified. *State v. Collins*, 311 Kan. 418, 425, 461 P.3d 828 (2020). Here, the district court weighed the evidence and found that Tindall was not entitled to self-defense immunity for his new offenses.

The manner in which these three issues were presented to the district court, though perhaps justified by considerations of judicial economy, has created a morass on appeal. Tindall's request for self-defense immunity, while appropriate in the new case with new charges, does not fit comfortably with the State's allegations that he violated his probation. Indeed, when the legislature created self-defense immunity, it limited the immunity's availability to "criminal prosecution[s]" or other "civil action[s]"—and probation violations do not fall neatly into either category. K.S.A. 2022 Supp. 21-5231(a). Accord *State v. Marquis*, 292 Kan. 925, 931, 257 P.3d 775 (2011) (definition of criminal prosecution does not include a probation-revocation proceeding).

Holding an evidentiary hearing to determine whether Tindall violated his probation simultaneously with assessing whether he should be immune from further procedures or consequences undercuts the basic purpose of self-defense immunity—avoiding the burdens of ongoing judicial proceedings. See *State v. Dukes*, 59 Kan. App. 2d 367, 372, 481 P.3d 184 (K.S.A. 2019 Supp. 21-5231[a] "'provides not only a defense to criminal liability, but also complete immunity from criminal prosecution' and civil

9

actions."), *rev. denied* 313 Kan. 1043 (2021). Tindall's immunity claim became superfluous as to the probation violations when it was heard at the same time as the substantive grounds for revocation precisely because Tindall could assert legally appropriate bases for self-defense on the merits. So at this juncture, immunity afforded Tindall no additional protection or relief.

These observations prompted us to ask the parties before oral argument whether immunity under K.S.A. 2022 Supp. 21-5231 is available *at all* against allegations that someone has violated the terms of their probation. Following oral argument, the parties each submitted additional briefing on this question. Unfortunately, the parties' oral and written responses have uncovered little law to answer it. And, of course, the district court was never given the opportunity to consider it, as neither the State nor Tindall brought the question to its attention.

In the end, however, the same procedural quagmire that prompted us to question whether immunity was available against the State's allegations that Tindall violated his probation makes answering it unnecessary. The district court found, after hearing all the evidence presented, that the State had shown by a preponderance of the evidence that Tindall had committed the crimes of aggravated assault, battery of a law enforcement officer, and resisting or obstructing arrest, thereby violating his probation. In doing so, it concluded the evidence did not support Tindall's assertion that he acted in self-defense for any of these offenses.

The district court found the relevant facts defeating Tindall's claim of self-defense against the aggravated-assault probation violation were proven by a preponderance of the evidence. And those findings are supported by substantial competent evidence in the record. More to the point here, the findings factually undercut Tindall's claim for self-defense immunity—assuming the claim could be raised at all—because the State negated self-defense by a stricter standard than would be required on an immunity claim. That is,

10

the State disproved Tindall's self-defense claim by a preponderance of the evidence, exceeding the probable-cause standard needed to overcome his assertion of immunity. So Tindall cannot show any legal prejudice based on the district court's denial of self-defense immunity in the combined hearing he agreed to. We therefore affirm the district court's judgment.

1. *The district court's findings that Tindall violated his probation by battering a law enforcement officer and obstructing or resisting his arrest are supported by substantial competent evidence.*

A person who has been convicted of a crime does not have an absolute right to probation. Rather, once a person has been sentenced for an offense, the initial decision to suspend that sentence and impose a term of probation is an act of judicial leniency when the presumptive punishment calls for incarceration, as was true for Tindall. When someone is released on probation, that person has a conditional liberty interest in remaining on probation. *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). But if someone violates the conditions of probation by committing a new offense, Kansas law grants district courts discretion to revoke probation and order that person to serve the original underlying sentence. K.S.A. 2022 Supp. 22-3716(c)(7)(C).

As we have indicated, the State must prove a probation violation by a preponderance of the evidence. *Lloyd*, 52 Kan. App. 2d at 782. Appellate courts defer to the district court's factual findings based on disputed evidence when they are supported by substantial competent evidence—that is, admissible relevant evidence that a reasonable person could accept as being adequate to support a conclusion. See *Inkelaar*, 38 Kan. App. 2d at 315; see also *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021) (defining substantial competent evidence). Because appellate judges do not see and hear witnesses as they testify, we do not reassess the district court's determination of witness credibility or reweigh the evidence generally. See *Collins*, 311 Kan. at 427.

11

After hearing the evidence presented over the course of two days of hearings in January 2022, the district court here found that the State met its burden to prove that Tindall violated his probation by committing three new crimes—aggravated assault against Tolbert, battery of a law enforcement officer, and resisting or obstructing arrest. We begin our discussion with the district court's findings that Tolbert violated his probation when he committed the offenses against the law enforcement officers.

*Battery of a Law Enforcement Officer*

The offense of battery of a law enforcement officer is defined by K.S.A. 2022 Supp. 21-5413(c)(1)(B), which criminalizes knowing physical contact with a uniformed law enforcement officer in a rude, insulting, or angry manner while the officer is conducting his or her law-enforcement duties. The district court found Tindall had committed this offense when his arms hit one of the officers as he thrashed around to avoid being handcuffed. Tindall used sufficient force to knock the officer backward. The officer who was hit testified she believed Tindall acted deliberately to keep her from grabbing his arm to place him under arrest.

On appeal, Tindall takes issue with this testimony regarding his intent, asserting that he "was not trying to hit anyone" and "he just threw his arm back." The district court rejected this same argument, finding Tindall's testimony on this point less than credible. Indeed, the testimony of both law enforcement officers supported the district court's finding that Tindall knowingly contacted the officer. See K.S.A. 2022 Supp. 21-5202(i) ("A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result."). This testimony, combined with the other evidence presented at the hearing, supported the district court's finding that Tindall committed this offense, thereby violating his probation.

12

Tindall has acknowledged that neither self-defense nor self-defense immunity applies to this charge. The concession is a wise one. Under K.S.A. 2022 Supp. 21-5229, a person cannot "use force to resist an arrest . . . being made . . . by a law enforcement officer . . . even if the person arrested believes that the arrest is unlawful." Likewise, self-defense immunity is unavailable under K.S.A. 2022 Supp. 21-5231(a) when a person uses force against law enforcement officers "acting in the performance of [their] official duties."

*Resisting or Obstructing Arrest*

Tindall's evidentiary challenges to the district court's finding that he knowingly resisted or obstructed his arrest fail for similar reasons. Tindall was charged with this offense under K.S.A. 2021 Supp. 21-5904(a)(3), which states it is a crime to knowingly resist or obstruct law enforcement in the discharge of any official duty. Kansas courts have clarified that someone commits this offense when they have "substantially hindered or increased the burden of the officer in carrying out" the officer's duty. *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017).

Tindall claims that none of his actions rose to the level of substantially hindering the officers from carrying out his arrest. Tindall argues that the evidence showed that his initial actions in resisting arrest—tensing up, thrashing his arms, and continuing to struggle as two officers took him to the ground to place him in handcuffs—occurred "in a matter of seconds." He asserts that this short length of time could not have significantly hindered the officers' efforts to arrest him. This argument fails for at least two reasons.

First, the duration of a struggle is one factor that may be taken into account when considering the extent of a person's resistance or obstruction under K.S.A. 2022 Supp. 21-5904. But it is not the sole factor. Rather, courts look to the extent and nature of the person's efforts to impede arrest. 305 Kan. at 690. Even limiting our consideration to the

13

period of time Tindall discusses, the State presented evidence that Tindall attempted to evade arrest by lunging away from two officers, thrashing his arms about to avoid being grabbed (knocking one officer back in the process), and continuing to struggle. The officers were only able to place Tindall in handcuffs after a third officer helped take Tindall to the ground. The district court did not find Tindall's efforts to downplay his conduct convincing, and the court's assessment is supported by substantial competent evidence in the record. In sum, Tindall's physical resistance precipitated a confrontation resulting in both he and the officers falling to the ground—a circumstance that substantially increased the chances that some or all of them would be injured. That amounts to both a hindrance to and an increased burden on the officers in carrying out their official duties.

Second, the evidence presented at the hearing surrounding Tindall's efforts to resist arrest was not limited to the initial struggle with the officers. Rather, the officers who testified at the hearing explained that Tindall continued to resist arrest even after he was placed in handcuffs. He refused to walk normally to the patrol car and then refused to place his legs in the patrol car so the officers could close the car door. These actions eventually led the officers to call a police van so Tindall could be taken to the police station. But even after Tindall was placed in the van, he continued to resist.

The district court found these actions, taken as a whole, showed that Tindall had violated his probation by engaging in "serious obstructionist behavior repeatedly and over a period of time." This conclusion is supported by substantial competent evidence. Tindall's arguments to the contrary are not persuasive.

Tindall advances an argument for self-defense and self-defense immunity to the obstruction charge that unfolds this way: The officers were trying to arrest him for a purported aggravated assault of Tolbert. But he acted in self-defense when he armed himself with the knife and confronted Tolbert; he, therefore, committed no crime and was

14

entitled to immunity. In turn, the officers wrongfully arrested him, so he could not be guilty of obstruction. Assuming for the moment the correctness of the premises upon which the argument is constructed—an assumption we dispel shortly—the ultimate legal conclusion fails. As we have already explained, K.S.A. 2022 Supp. 21-5229 precludes the use of force, i.e., self-defense, to resist arrest even if the person being arrested believes the law enforcement officers have acted unlawfully. The statutory preclusion undoes Tindall's argument. A legal rule of the sort Tindall posits would foster an exceptionally dangerous policy, encouraging citizens to engage in self-help resistance to arrests they thought unlawful. The legislature enacted K.S.A. 21-5229 to deter just the sort of conduct Tindall claims for himself here.

In short, even if this immunity were available in the abstract for probation violations—a dubious claim, as we discuss in Section 2 below—it was not available as a matter of law for Tindall's battery of the law enforcement officer and for his resisting arrest. The district court found that he committed these offenses. It further explained, in revoking Tindall's probation, that although the evidence on whether Tindall committed an aggravated assault against Tolbert came down to a credibility battle, this offense constituted what the court considered to be a "slightly lesser crime." It found Tindall's conduct directed at the law enforcement "abhorrent."

The district court did not explicitly state that those violations alone would have warranted revoking Tindall's probation, though it certainly found them troubling. To impute such a finding to the district court or to independently make such a finding would usurp the district court's discretion and overstep our authority. Appellate courts cannot deploy mere guesswork to supersede a discretionary call a district court never actually made. Cf. *State v. Herring*, 312 Kan. 192, 201, 474 P.3d 285 (2020) (Although a reviewing court "may think" it knows what a district court would have done, "it cannot know for sure until the lower court does the analysis.").

15

*Aggravated Assault Against Tolbert*

Tindall's challenges to the district court's aggravated-assault finding are unsuccessful for similar reasons; though different versions of the events were presented at the hearing, evidence in the record supports the district court's finding. Tindall acknowledges that evidence presented at the hearing—mostly Tolbert's own testimony—supported Tolbert's version of the events and the district court's concomitant findings that Tindall was an unlawful aggressor, threatening Tolbert with the knife. He acknowledges that the district court explicitly found Tolbert's testimony to be more credible than Tindall's. Tindall asserts, however, that we should not defer to this assessment. He argues Tolbert was the initial aggressor when he arrived at Tindall's home. And he asserts there were various other red flags at the hearing, including Tolbert's criminal history and inconsistencies in Tolbert's testimony, that should cause us to question the district court's credibility finding.

We decline Tindall's invitation to reassess the witnesses' credibility for several reasons. Most practically, we were not present at the hearing, and it is not this court's function to reweigh the evidence when the facts are disputed. Instead, our review is limited to assessing whether substantial competent evidence supports the district court's findings and whether its conclusions are consistent with the law. See *Collins*, 311 Kan. at 427. Our review of the record shows that the district court appreciated that Tolbert and Tindall both had less-than-pristine backgrounds and presented conflicting accounts of what occurred. Even so, the district court found Tolbert's account to be more credible. Tindall provides no reason—beyond his own self-serving account—to question the district court's credibility finding. Accord *Smith*, 312 Kan. at 887 (adverse credibility assessments will not be second-guessed on appeal unless the person challenging the assessment proves the district court arbitrarily disregarded undisputed evidence or acted based on bias, passion, or prejudice).

Here, the district court acknowledged that the evidence was disputed as to whether Tindall or Tolbert initially escalated the argument in the front yard. But regardless of who may have been the initial aggressor, the court found that this altercation dissipated when Tindall went back inside his home and Tolbert went with his wife into Tindall's backyard to collect some belongings. A measurable time elapsed before Tindall came back outside and menaced Tolbert with the knife. At that point, contrary to Tindall's arguments on appeal, the district court found that Tindall was knowingly swinging a knife at Tolbert; he was not defending himself or his property. In other words, the district court found that Tindall committed aggravated assault and was not acting in self-defense. This finding is consistent with Tolbert's testimony at the hearing and thus is supported by substantial competent evidence in the record.

In conclusion, the district court found that the State had proven by a preponderance of the evidence that Tindall violated his probation by committing the offenses of aggravated assault, battery of a law enforcement officer, and resisting or obstructing arrest. In doing so, the district court rejected Tindall's arguments that he was acting in self-defense or was defending his property when he assaulted Tolbert; these defenses were not available as a matter of law for Tindall's crimes against the law enforcement officers. The district court's factual findings are supported by substantial competent evidence in the record. We thus affirm the district court's ruling that Tindall violated the terms of his probation and its ultimate revocation of his probation and imposition of his underlying sentences.

2. *Tindall has not shown he was entitled to immunity from further probation-revocation proceedings.*

Before closing, we pause to consider the elephant in this appellate room—can an assertion of immunity based on self-defense or defense of property ever shield a person from allegations that his or her actions violated the conditions of probation? We need not

address that question in great detail here. But we provide a few observations of the evidence presented and the procedures that took place in this case.

Whether in a criminal prosecution, a civil case, a probation hearing, or some other context, a person may always attempt to justify conduct by asserting he or she was acting in self-defense or defense of that person's property. See K.S.A. 2022 Supp. 21-5222(a). But the legislature has indicated that a person's use of force in some situations creates not just a defense but an immunity to facing a criminal prosecution or a civil action in the first instance. In particular, a person who uses force in self-defense "is immune from criminal prosecution and civil action for the use of such force." K.S.A. 2022 Supp. 21-5231(a). Under the immunity statute, criminal prosecution "includes arrest, detention in custody[,] and charging or prosecution of the defendant." K.S.A. 2022 Supp. 21-5231(a). The statutory language outlines the steps in bringing criminal charges against a defendant and the disposition of those charges through either a trial resulting in a conviction or acquittal, or a plea and conviction. As we have indicated, probation is simply one way in which a criminal defendant who has already been successfully prosecuted, i.e., convicted of a crime, may be penalized.

Kansas courts have held in other contexts that the revocation of probation "is *not* part of *criminal prosecution*." (Emphases added.) *Marquis*, 292 Kan. at 928. For this reason, courts have found that "the full panoply of rights due in a criminal prosecution is not applicable" in a probation-revocation proceeding. 292 Kan. at 928. The parties here disagree as to whether the legislature intended for immunity to be available in the probation context, and there is little if any caselaw addressing that subject. But we observe that the facts and procedural history of this case highlight some of the practical and theoretical difficulties that might arise if it were.

Most notably, if probationers were to be immune from proceedings to determine the consequences of their use of force under K.S.A. 2022 Supp. 21-5231(a), that

18

determination would have to be made before the district court assessed the evidence of any alleged probation violations. Kansas courts have explained that the question of immunity must be addressed "at the early stages of the proceeding based on the evidentiary record submitted" at the hearing on the request for immunity. *Phillips*, 312 Kan. at 659. "Otherwise, the immunity protections afforded by our Legislature would be rendered meaningless if the resolution of the immunity question, including disputed facts relevant to it, were delayed until trial." 312 Kan. at 659.

But while this procedural protection makes sense when a person is asserting immunity at the outset of a criminal prosecution or a civil case, it does not fit well in the probation context. People serving probation have already been convicted of crimes and sentenced; they are released on probation under an act of judicial leniency. The statute governing probation violations and revocations contemplates an expeditious hearing in which a district court determines if a violation has occurred and, if so, makes a discretionary decision whether to continue the probation or send the violator to prison. The district court rather than a jury makes those assessments. See K.S.A. 2022 Supp. 22-3716. And the process often happens quickly so the parties can address the probationer's alleged misconduct and determine the most appropriate path going forward to best balance the policies of rehabilitation, retribution, and deterrence bound up in the sentencing and punishment of convicted criminals. If the legislature intended immunity to apply in this context, thereby injecting a new and initial layer of proceedings in resolving at least some probation violations, it seems odd that it did not explicitly say so or alter K.S.A. 22-3716 to account for this reality.

As we have indicated, this discussion has largely been rendered academic since the district court rejected Tindall's claim of self-defense on the merits. In other words, the district court found the State had proven that it was more probable than not that Tindall committed aggravated assault and that he had not been acting in self-defense. This standard of proof was higher than a standard of proof at a hearing to determine whether

19

immunity under K.S.A. 2022 Supp. 21-5231(a) applies. See *Dukes*, 59 Kan. App. 2d at 372. Tindall thus cannot show that the outcome would have been different if there had been a separate hearing on his immunity claim.

And after much intellectual tumbling, Tindall's assertion of self-defense immunity, if available, is limited to only one violation of his probation—his aggravated assault of Tolbert. The district court found, after hearing all the evidence, that Tindall's claim was not credible. There is substantial competent evidence in the record to support this conclusion. Regardless of whether immunity may be available in the abstract in probation-revocation proceedings, the district court did not err by denying Tindall's motion to dismiss based upon self-defense immunity here. We affirm the district court's judgment.

Affirmed.